NOBLE E. PIERCE *vs.* LUCIUS B. NORTON ET UX.

First Judicial District, Hartford, October Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

A defendant who seeks to defeat a recovery by an attorney at law for professional services, upon the alleged ground that he had fraudulently, or negligently and in bad faith, induced the defendant to pay money in settlement of claims which he did not owe, cannot object to evidence of the circumstances under which the services were rendered, as tending to show their value and the plaintiff's good faith; nor is the defendant, under such a defense, in any position to criticise the plaintiff for violating the seal of secrecy applicable to the relation of attorney and client.

Under such circumstances evidence is admissible to show that the client was charged with embezzlement of the funds of a corporation doing a collection business, of which he was the manager, that he stood in grave peril by reason thereof, that civil actions were also pending against him for the recovery of large sums, and that these were *nolled* and withdrawn as a result of the settlement advised by the attorney and effected through his efforts.

The plaintiff was allowed to testify that the cash-book of .the corporation of which the defendant was manager, which the plaintiff had examined, contained entries showing that certain claims, sent to the corporation for collection, had in fact been paid, although the agency had reported otherwise to the creditors. Several pages of the cash-book had already been laid in evidence, and it did not appear but what the items referred to were contained in those pages, while the books themselves were apparently in court available to the defendant had he chosen to resort to them to correct this oral testimony of the plaintiff. *Held* that the admission of this evidence, under these circumstances, did not furnish the defendant any ground for a new trial.

Argued October 8th—decided December 17th, 1909.

ACTION to recover for services as an attorney at law, brought to the Superior Court in Hartford County and tried to the jury before *Robinson, J.;* verdict and judgment for the plaintiff for $1,800, and appeal by the defendants. *No error.*

*\*Charles S. Hamilton,* and *Eldridge Anderson* of Boston, for the appellants (defendants).

*William F. Henney* and *Josiah H. Peck,* with whom was *Bernard F. Gaffney,* for the appellee (plaintiff).

HALL, J. The plaintiff, an attorney at law of this State, brings this action to recover for professional services rendered the defendants between the dates of February 11th and October 6th, 1908. The total of the charges in the bill of particulars is $4,079.34, while the credits amount to $1,300. The circumstances which the plaintiff claimed to have proved, as indicating the character of his services, were these:—

Prior to 1899 the defendant Lucius B. Norton had conducted a collection agency in Hartford, under the name of the National Mercantile Company. In 1899 he caused it to be incorporated under that name in Connecticut, with an authorized capital stock of $5,000, and in 1900 to be incorporated under the same name in Maine, with a capital

---

* NOTE.—Immediately before the closing argument, the Chief Justice made the following observations:—

The court has noticed with regret in the brief of the appellants the use, in reference to certain acts of a member of the bar not connected with this cause, and to other acts of counsel for the appellee on the trial in the Superior Court, of epithets which it regards as entirely out of place.

Personalities of such a nature should be avoided in arguments addressed to this court.

The court refers particularly to passages on pages 17, 19, and 27 of the brief. Had its attention been called to them at the opening of the cause, the brief would not have been received, until they had been stricken out.

stock of $250,000. The business of the collection agency was carried on until 1904 without anything to indicate to the public which of said corporations was conducting it.

In 1904 Norton caused the Maine corporation to issue all its capital stock to him as paid up stock, the only consideration therefor being the transfer to the Maine company of the business of the Connecticut company, and caused the Maine company to vote to pay him an annual salary of $10,000 for acting as president, treasurer and general manager of the company.

Between 1904 and 1908 Norton sold shares of the stock of the Maine company to various persons to the amount of $60,000. In February, 1908, Norton was also manager of the International Petroleum and Refining Company, a Maine corporation, owning mining properties in Indiana, and was the owner of $900,000, par value, of the $1,000,000 of stock of said company, and was also the manager of the Mechanics Mutual Fire Insurance Company of Connecticut, for which Norton had obtained a special charter in this State. Norton had an office in Hartford, and the books of said several corporations were kept there.

On February 10th and 11th, 1908, actions were instituted in Maine and in this State, by a stockholder of said Maine company, in which receivers were appointed of the National Mercantile Company, who commenced an action against these defendants claiming $200,000 damages, and who later commenced an action in Maine against said International Petroleum and Refining Company and these defendants, claiming $500,000 damages; and in March, 1908, a criminal action was instituted against said Norton in the Hartford Police Court, charging him with having embezzled the funds of said National Mercantile Company of Maine, and of persons doing business with the National Mercantile Company, upon which Norton was bound over for trial in the Superior Court.

The plaintiff acted as counsel for these defendants while

these actions were pending, and appeared for them, both in the courts of this State and of Maine, and in June, 1908, with the approval of the Nortons, an agreement of settlement of all claims against the Nortons was arranged by the plaintiff and other counsel for the Nortons, and counsel for the receivers, to take effect upon its approval by the courts in which said receivership proceedings were pending, by the terms of which agreement the Nortons were to cancel their stock in the National Mercantile Company, and to pay to the receivers $15,000. After said courts had approved said agreement of settlement, the defendants, on the 12th of October, 1908, upon the plaintiff's refusal to aid them to repudiate said agreement of settlement, discharged him and procured other counsel. The defendants afterward paid the receivers the $15,000 in settlement of all the claims against them, and said criminal proceedings were thereafter *nolled.*

The plaintiff claimed to have proved that it was agreed between himself and the defendants that he was to be paid from $3,500 to $4,000 for his services.

The defendants in their answer admit having employed the plaintiff, but deny that the services rendered were worth more than the $1,300 paid by them.

The finding states that the defendants claimed to have proved that they had been guilty of no crime, and were not indebted to the National Mercantile Company; that Lucius B. Norton had frequently so told the plaintiff; and that the plaintiff, from corrupt motives or from timidity and incompetency, urged said settlement upon the defendants and frightened them into signing it.

The defendants' appeal contains seventy-eight assignments of error based either upon the failure of the court to charge as requested, or to the charge as given, or to the rulings upon questions of evidence. Most of them are so clearly unfounded as to require no discussion. The following is a part of the charge complained of:—

"And right here, gentlemen, I ought to say to you, as there has been some criticism as to Mr. Pierce's revelations, as to what took place between him and his client, Mr. Norton, on some occasions, and these criticisms have been as if there was something of a discreditable nature in his repeating such matters here in court in response to the claims and statements of Mr. Norton on the witness stand, let me say to you . . . that the seal of secrecy as between attorney and client is broken when, in a suit for services by an attorney against his client, his client enters upon a line of defense which involves what in fact took place between him and his attorney and respecting which the client testifies as in this case, the client waives any right to object to the attorney giving his account of the matter and the criticisms of counsel as to Mr. Pierce revealing professional secrets has no justification in law."

The line of defense adopted in this action, and attempted to be supported by the testimony of Norton, was that the plaintiff, either corruptly or from incompetency, had induced the defendants to pay $15,000 to the receiver in settlement of the suits against them, when he knew or had good reason to know that the defendants had neither committed the offenses nor were indebted to the National Mercantile Company, as charged in the civil and criminal actions against them.

An attorney may maintain an action against his client for professional services, and when to such action a defense like that in the present case is made, he may show the circumstances under which the services were rendered, in proof of their value and in proof of his good faith. The finding states that the defendants offered evidence to prove that Lucius B. Norton had not been guilty of any crime or wrong doing; that neither of the defendants owed the National Mercantile Company; and that Lucius B. Norton had so repeatedly told the plaintiff. The record shows that such was the testimony of Lucius B. Norton.

Clearly the plaintiff was entitled to meet this evidence by proving either that Lucius B. Norton did not so inform him, or that Norton told him the contrary, or that the plaintiff, from his investigations of Norton's transactions, had good reason to believe that such statement, if made by Norton, was untrue, and that the plaintiff acted in good faith and with good judgment with reference to the settlement made. There was no error in the language of the charge above quoted. *Hunt* v. *Blackburn*, 128 U. S. 464, 470, 9 Sup. Ct. Rep. 125; *Mitchell* v. *Bromberger*, 2 Nev. 345; *Nave* v. *Baird*, 12 Ind. 318. We find no error in the remainder of the charge or in any failure to charge as requested.

There is no sufficient reason for repeating here the exceptions of defendants' counsel, some twenty-eight in number, to the rulings of the trial court upon questions of evidence. They were all taken to the admission of evidence, against the defendants' objections, upon the grounds, generally, that such evidence was irrelevant or related to collateral matters or to transactions between other parties. Such evidence included records of the proceedings for the appointment of the receivers, and of the actions against the defendants above referred to; of correspondence between Norton and others, shown to the plaintiff by Norton; correspondence and conversations between the plaintiff and others respecting said actions and the affairs of the National Mercantile Company, all offered in presenting the plaintiff's case; and of questions to Norton upon cross-examination regarding letters and documents afterward laid in evidence, and concerning entries in the books of the National Mercantile Company, offered generally for the purpose of contradicting the testimony of Norton that he had committed no criminal offense, was not indebted to the National Mercantile Company, and that he had so told the plaintiff.

We must decline to discuss all of the claims of defend-

ants' counsel respecting the rulings of the trial court, and the purpose for which such evidence was offered. Many of them are such as should find no place in a brief addressed to this court. It is sufficient to say of most of the rulings complained of, that the evidence received was admissible either to show the character of the plaintiff's services or to contradict the defendants' evidence that the plaintiff was either incompetent or that he acted in bad faith.

One of the rulings complained of was the admission, against the defendants' objection, of the testimony of the plaintiff in rebuttal, that the cash-book of the National Mercantile Company, which the plaintiff had examined, contained entries showing that four claims amounting to over $100, which had been sent to the company by one of its customers for collection and which had been reported to such customer as not collected, had in fact been collected.

The admission of this oral testimony of the contents of the book furnishes no ground for a new trial. Certain pages of the cash-book had already been laid in evidence, and it does not appear that these items were not upon those pages. The books in question were apparently in court and available to the defendants. It does not appear that the defendants attempted to show from the books, or that they even claimed, that the plaintiff's statements regarding the entries in the books were incorrect. In *Elmira Roofing Co.* v. *Gould,* 71 Conn. 629, 42 Atl. 1002, we held that a trial court might, in its discretion, when books of account were voluminous and were produced for inspection and for the purpose of cross-examination, permit a competent witness who had examined them to testify to the result of such examination.

There is no error.

In this opinion the other judges concurred.