FARMINGTON SAVINGS BANK *v.* ZONING BOARD OF APPEALS OF THE TOWN OF FARMINGTON ET AL.
(10595)

SPEZIALE, C. J., PARSKEY, SHEA, GRILLO and BIELUCH, Js.

Argued January 4—decision released April 26, 1983

*Victor J. Dowling,* for the appellant (plaintiff).

*Palmer S. McGee, Jr.,* with whom was *James J. Tancredi,* for the appellee (named defendant).

*Ralph G. Elliot,* for the appellees (defendants Cady et al.).

SHEA, J. This appeal concerns the refusal of a town building inspector to issue a permit to demolish a building located in an area designated as an historic district. In February, 1979, the Farmington building inspector denied the application for a demolition permit because the plaintiff Farmington Savings Bank failed to obtain prior approval for the demolition from the Farmington historic district commission. The bank appealed the inspector's denial to the zoning board of appeals of the town of Farmington. The zoning board affirmed the inspector's determination. The bank then appealed the zoning board's decision to the Superior Court. The trial court permitted several persons owning property adjacent to or near the bank's land to intervene as defendants. After a trial of the issues, the trial court dismissed the appeal. The bank has appealed to this court from that judgment.

The facts are not substantially disputed. In April, 1964, the Farmington town council appointed an historic district study committee. Pursuant to the enabling act; General Statutes (Rev. to 1963) §§ 7-147a through 7-147m;[1] the council took the

[1] The following provisions of the enabling act, General Statutes (Rev. to 1963) §§ 7-147a through 7-147m, are relevant to this appeal:

"Sec. 7-147a. HISTORIC DISTRICTS AUTHORIZED. Any municipality may by vote of its legislative body establish within its confines an historic district or districts to promote the educational, cultural, economic and general welfare of the public through the preservation and protection of buildings, places and districts of historic interest by the maintenance of such as land marks in the history of architecture, of the municipality, of the state or of the nation, and through the development of appropriate settings for such buildings, places and districts. The legislative body of any municipality may make appropriations for the purpose of carrying out the provisions of sections 7-147a to 7-147k, inclusive."

"Sec. 7-147b. PRELIMINARY STEPS. Prior to the establishment of an historic district or districts, the following steps shall be taken:

"(a) The legislative body shall appoint an historic district study committee for the purpose of making an investigation of a proposed historic district. Each historic district study committee established under the provisions of sections 7-147a to 7-147k, inclusive, shall consist of five members who shall be electors of the municipality holding no salaried municipal office.

"(b) The historic district study committee shall investigate and report on the historic significance of the buildings, structures, features, places or surroundings to be included in a proposed historic district or districts and designate the area to be included therein.

"(c) The historic district study committee shall transmit copies of its report to the Connecticut historical commission, the planning commission and zoning commission of the municipality, if any, and, in the absence of such a planning commission or zoning commission, to the selectmen or to the warden and burgesses, or to the chief executive officer of the municipality for their consideration and recommendations, and each such body or individual shall give his recommendations to the historic district study committee within *ninety* days from the date of receipt of such report. *In addition to such other recommendations at it may make, the Connecticut historical commission may comment upon and may recommend either approval, disapproval, modification, alteration or rejection of the boundaries of each proposed district.* Such recommendations shall be read in full at the public hearing to be held by the historic district study committee as hereinafter specified. Failure to make

necessary steps to establish an historic district in 1965. The study committee submitted to the council a report recommending a proposed district; General Statutes (Rev. to 1963) § 7-147b (b) and (c); which included the plaintiff's property, and held a public hearing on the proposal; General

recommendations within *ninety* days after the date of such receipt shall be taken as approval of the report of the historic district study committee.

"(d) The historic district study committee shall hold a public hearing on the establishment of a proposed historic district or districts not less than *one hundred twenty* days nor more than one hundred *fifty* days after the transmission of its report as provided in subsection (c) of this section.

"(e) Notice of the time and place of such hearing shall be given as follows: (1) Written notice, postage prepaid, shall be given to the owners of record of all real property to be included in the proposed historic district or districts, as they appear on the last-completed grand list, at the addresses shown thereon, at least twenty days before the time set for such hearing, *together with a copy of the report of the historic district, study committee or a fair and accurate synopsis of such report, a copy of all recommendations made under subsection (c) of this section, a map showing the boundaries of the area to be included in the proposed district, and a copy of the proposed ordinance;* and (2) by publication of such notice in the form of a legal advertisement appearing in a newspaper having a substantial circulation in the municipality at least twice, at intervals of not less than five days, the first not more than twenty days nor less than ten days, and the last not less than two days before such hearing.

"(f) The historic district study committee shall submit a final report to the legislative body of the municipality within sixty days after the public hearing. The report of the committee shall contain the following: (1) A complete description of the area to be included within the proposed historic district or districts, *including the total number of buildings therein listed according to their known or estimated ages;* (2) a map showing the exact boundaries of the area to be included within the proposed historic district or districts; (3) a proposed ordinance designed to implement the provisions of sections 7-147a to 7-147k, inclusive; (4) a copy of the report and recommendations of the historical commission; (5) such other matters as the committee may deem necessary and advisable.

"(g) The legislative body after reviewing the report of the historic district study committee shall *cause ballots to be taken of the owners of record of all real property to be included in the proposed district on the question of the adoption of an historic*

Statutes (Rev. to 1963) § 7-147b (d) ; written notice of which was sent to owners of record of real property located in the proposed district. General Statutes (Rev. to 1963) § 7-147b (e). The town council then "cause[d] ballots to be taken of the owners of record of all real property to be included in the proposed district on the question of the adoption of an historic district ordinance . . . ." General Statutes (Rev. to 1963) § 7-147b (g). The town

district ordinance and, if seventy-five per cent of all such owners voting thereon vote affirmatively by such ballots, shall take one of the following steps: (1) Reject the report of the committee, stating its reasons therefor; (2) accept the report of the committee and enact an ordinance, to carry out the provisions of sections 7-147a to 7-147k, inclusive; (3) return the report to the historic district study committee with such amendments and revisions thereto as it may deem advisable, for consideration by the committee and a further report to the legislative body within ninety days of such return.

"(h) The historic district commission established under section 7-147c may from time to time, by following the procedure set out in subsections (b) to (f), inclusive, of this section, suggest proposed amendments to any ordinance adopted hereunder or suggest additional ordinances to be adopted hereunder."

\* \* \* \*

"Sec. 7-147d. CERTIFICATE OF APPROPRIATENESS. No building or structure \* \* \* shall be erected, altered, restored, moved or demolished within an historic district until after an application for a certificate of appropriateness as to exterior architectural features has been submitted to the commission and approved by said commission. For the purposes of sections 7-147a to 7-147k, inclusive, 'exterior architectural features' shall include *such portion of* the exterior of a structure \* \* \* *as is open to view from a public street, way or place.* The style, material, size and location of outdoor advertising signs and bill posters within an historic district shall also be under the control of such commission. *The provisions of this section shall not be construed to extend to the color of paint used on the exterior of any building or structure."*

\* \* \* \*

"Sec. 7-147k. PRIOR DISTRICTS UNAFFECTED. The provisions of sections 7-147a to 7-147j, inclusive, shall in no way impair the validity of any historic district previously established under any special act."

"Sec. 7-147l. METHOD OF BALLOTING. ELIGIBILITY TO VOTE. (a) Any ballot or balloting required under the provisions of sections

of Farmington interpreted the voting eligibility provision of General Statutes (Rev. to 1963) § 7-147*l* (b) as rendering the balloting requirement of § 7-147b (g) applicable only to natural persons. Corporate landowners, including the plaintiff, did not receive ballots. Since the proposed district was approved by over 75 percent of those voting, the council, on April 27, 1965, enacted an ordinance, Ordinance No. 47,[2] to effectuate the purposes of the enabling act. See General Statutes (Rev. to 1963) § 7-147b (g).

7-147b and 7-147m shall be taken in writing by mail, or by use of voting machines at a special election warned and held for such purpose, Such warning shall be by written notice mailed to each person eligible to vote in such election at least fifteen days in advance thereof and by publication in a newspaper having a general circulation in the municipality seven days before the election. Any person eligible to vote in any such election shall be given an opportunity to vote by absentee ballot under the usual requirements for voting in such manner.

"(b) In any balloting required under the provisions of said sections, each owner of real property within the district of the age of twenty-one years or more who, jointly or severally, is liable to the town for taxes assessed against him on an assessment of not less than one thousand dollars on the last-completed grand list of the town on real property within the district, or who would be so liable if not entitled to an exemption under subdivision (17), (20), (23), (24), (26) or (27) of section 12-81, may vote, provided no person holding real property as guardian, conservator, trustee, executor, administrator or in any other fiduciary capacity shall be eligible to ballot hereunder, and no such person or property shall be included in any computation of numbers or percentages required by said sections."

[2] The following provisions of Ordinance No. 47, "An Ordinance Creating a Farmington Historic District and a Farmington Historic District Commission," are relevant to this appeal:

"SECTION 1.   PURPOSE:   ESTABLISHMENT OF FARMINGTON HISTORIC
        DISTRICT

"In order to promote the educational, cultural, economic and general welfare of the Town of Farmington and others through the preservation and protection of buildings and places of historic interest and through the development of appropriate settings for such buildings and places, a Farmington Historic District, as shown on the map referred to in Section 12 of this Ordinance, is hereby

Ordinance No. 47, § 5, which is patterned after General Statutes (Rev. to 1963) § 7-147d provides: "No building or structure shall be erected, altered, restored, moved or demolished within the Farmington Historic District until after an application for a certificate of appropriateness as to exterior architectural features has been submitted to the [Historic District] Commission and approved by said Commission." The building inspector refused to act upon the bank's application for a demolition permit on the ground that the bank had not obtained

established pursuant to Sections 7-147a to 7-147m, inclusive, of the General Statutes of Connecticut (1963 Supplement) as amended.

"SECTION 2.   ESTABLISHMENT OF FARMINGTON HISTORIC DISTRICT COMMISSION

"A Farmington Historic District Commission, of the Town of Farmington, hereinafter referred to as the Commission, consisting of five members and three alternate members is hereby established. It shall be the purpose of the Commission to perform the duties and functions of an historic district commission as provided in Section 7-147a to 7-147m, inclusive, of the General Statutes of Connecticut (1963 Supplement) as amended and in this ordinance.

\* \* \* \*

"SECTION 5.   CERTIFICATE OF APPROPRIATENESS

"No building or structure shall be erected, altered, restored, moved or demolished within the Farmington Historic District until after an application for a certificate of appropriateness as to exterior architectural features has been submitted to the Commission and approved by said Commission. 'Exterior architectural features' shall include such portion of the exterior of a structure as is open to view from a public street, way or place. The style, material, size and location of outdoor advertising signs and bill posters within the Farmington Historic District shall also be under the control of the Commission. The provisions of this section shall not be construed to extend to the color of paint used on the exterior of any building or structure.

\* \* \* \*

"SECTION 12.   BOUNDARIES

"The boundaries of the Farmington Historic District shall be as shown on a map, 'Map Showing Proposed Boundaries of the Farmington Historic District,' attached hereto and incorporated and made a part of this ordinance."

a certificate of appropriateness. Although conceding that its property was listed among those parcels of real property included within the historic district established by Ordinance No. 47, the bank claimed that it was not required to seek a certificate of appropriateness because the ordinance was inapplicable to its property. The gist of the bank's argument is that the town of Farmington improperly interpreted the balloting provisions of the historic district enabling act to exclude corporate owners of real property from voting on the proposed district. The result, according to the bank, is the exemption of its property from the historic district. The trial court found that the Farmington town council had properly interpreted the provisions of § 7-147*l* (b), as it existed in 1965, as granting voting privileges only to natural persons owning affected property. The trial court therefore concluded that the bank was subject to the historic district ordinance and that the building inspector had properly declined to issue a demolition permit for lack of a certificate of appropriateness.

On appeal the bank raises the following issues: (1) whether the trial court erred in concluding that the balloting provisions of the historic district enabling act did not apply to corporate owners of real property within the proposed historic district; and (2) whether Public Acts 1980, No. 80-314(11), now codified as General Statutes § 7-147k,[3] cures

---

[3] "[General Statutes] Sec. 7-147k.  PRIOR DISTRICTS UNAFFECTED. VALIDATION OF PRIOR CREATIONS AND ACTIONS.  NONPROFIT INSTITUTIONS OF HIGHER EDUCATION EXCLUDED.  (a) The provisions of sections 7-147a to 7-147k, inclusive, shall in no way impair the validity of any historic district previously established under any special act or the general statutes.  Any and all historic districts created under the general statutes, prior to October 1, 1980, otherwise valid except that such districts, district study committees, municipalities or officers or employees thereof, failed to comply with the requirements

the possible defects in the adoption of the historic
district ordinance which the plaintiff relies upon
in claiming that its property is exempt from that
ordinance. Since our resolution of the second issue
disposes of the appeal, we need not address the
first. We find no error.[4]

## I

Prior to discussing the effect of General Statutes
§ 7-147k upon this appeal, we must first address the
threshold issue, raised by the defendants, of
whether the appeal is properly before this court.
According to the defendants, the plaintiff bank
should not have pursued administrative remedies,
but instead should have brought an action for a
declaratory judgment. The defendants contend that
the plaintiff's claim that it is exempt from Ordi-
nance No. 47, § 5 is inappropriate for review as a

of any general or special law, and any and all actions of such dis-
tricts or historic district commission, are validated.

"(b) The provisions of sections 7-147a to 7-147k, inclusive, shall
not apply to any property owned by a nonprofit institution of higher
education, for so long as a nonprofit institution of higher education
owns such property."

[4] General Statutes (Rev. to 1963) § 7-147b (d) provided that the
historic district study committee had to hold a public hearing on
the establishment of a proposed historic district after recommending
one to the town council. Written notice of the time and place of
such a hearing was required by General Statutes (Rev. to 1963)
§ 7-147b (e) to be given "to the owners of record of all real property
to be included in the proposed historic district . . . ." The trial
court found that the plaintiff had not received such notice because
the provision had been interpreted as applicable only to natural
persons. We do not view the plaintiff's discussion of this lack of
notification as asserting a separate ground for finding error below.
In its brief the plaintiff refers to this provision requiring notice
to "owners of all real property . . ." as supporting its proposition
that similar language in the balloting provision, General Statutes
(Rev. to 1963) § 7-147b (g), should not be read as limited only to
owners who are natural persons. This view comports with the
analysis of the trial court, whose ruling concerns only the balloting
provision.

zoning appeal, since such review would be violative of the principle that one cannot seek approval of the zoning board and at the same time attack the validity of the zoning regulations. See *Strain* v. *Zoning Board of Appeals,* 137 Conn. 36, 38–40, 74 A.2d 462 (1950); *Zelvin* v. *Zoning Board of Appeals,* 30 Conn. Sup. 157, 162, 306 A.2d 151 (1973); 82 Am. Jur. 2d, Zoning & Planning § 259. Moreover, the defendants argue that where the validity of a town ordinance is being challenged an action for a declaratory judgment is appropriate because the town and others are necessary parties. See *England* v. *Coventry,* 183 Conn. 362, 365, 439 A.2d 372 (1981); *Meadowbrook Third Co-op, Inc.* v. *Hamden,* 165 Conn. 546, 550, 338 A.2d 478 (1973).

Although we have often stated that declaratory judgment actions may be appropriate proceedings in which to determine rights in regard to the regulation of administrative agencies; see *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 104, 291 A.2d 721 (1971); *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, 673, 179 A. 195 (1935); *Sigal* v. *Wise,* 114 Conn. 297, 301, 158 A. 891 (1932); the factor determining the proper forum is the underlying basis of the party's claim. "[D]eclaratory judgment proceedings are appropriate for determining jurisdictional issues or questions concerning the validity of the regulations of an administrative agency, while questions concerning the correctness of an agency's decision in a particular case or the sufficiency of the evidence can properly be resolved only by appeal. *Hartford Electric Light Co.* v. *Water Resources Commission,* [162 Conn. 89] 104–105 [291 A.2d 721 (1971)]." *Aaron* v. *Conservation Commission,* 178 Conn. 173, 178, 422 A.2d 290 (1979). The plaintiff's claim clearly falls into

the category of "questions concerning the correctness of an agency's decision in a particular case." The bank has consistently contended that its property was never subject to the historic district established by Ordinance No. 47. If the bank were correct in this contention, the procedure it followed— application for permit, appeal to the zoning board and administrative appeal to the Superior Court— would clearly be correct. That the plaintiff might be incorrect in its underlying assumption does not change the appropriateness of the forum chosen. The bank's appeal, therefore, is properly before this court.

## II

In 1980 the General Assembly enacted an extensive revision of the historic district enabling act. See Public Acts 1980, No. 80-314. The legislative history of this revision indicates that it was made in response to the internal inconsistencies and the lack of clarity in the existing statutes resulting from the repeated piecemeal amendment of the act since its passage in 1961.[5] Both chambers of the

[5] "The Historic District Enabling Statute is in need of change and improvement, however. Since the law's passage in 1961, almost every session of the General Assembly has had some changes to the law. The result is that certain sections are internally inconsistent and confusing. In other places, the law is unclear or silent on procedure and the responsibilities of the local commission. Senate Bill 16 provides the opportunity to benefit from some 20 years of experience in creating and operating historic districts in the first comprehensive re-drafting of the historic district law since its inception.

"Senate Bill 16 represents the culmination of years of work by the staff of both the Connecticut Historical Commission and the Association of Connecticut Historic District Commissioners. This bill has been subjected to detailed criticism by local historic district commission members on several occasions." Hearings before Joint Standing Committee on Planning & Development 1980 Sess., Pt. 1, p. 99 (remarks of John W. Shannahan, Director of the Connecticut Historical Commission and State Historical Preservation Officer for Connecticut).

General Assembly were aware that legal controversies had arisen from the imprecision of the existing statutes and enacted the revision with the express purpose of permitting effective judicial enforcement of historic preservation laws.[5]

With this legislative background in mind we turn to the question of what effect, if any, the enactment of § 7-147k has on the plaintiff's action. This section provides in pertinent part: "Any and all historic districts created under the general statutes, prior to October 1, 1980, otherwise valid except that such districts, district study committees, municipalities or officers or employees thereof, failed to comply with the requirements of any general or special law, and any and all actions of such districts or historic district commission are validated." General Statutes § 7-147k (a). The plaintiff claims that although its property is located in the area designated as an historic district by Ordinance

"Bill 16 is essentially a housekeeping bill which is meant to clarify and in some ways simplify the present procedure for setting up an historic district.

"The bill does not substantially change the process or alter the significance of an historic district and has been the result of many years of research and study by people who have been closely involved with the process. The proposed revision to the present law attempts to clarify sections where the procedure for the town is unclear and to remove internal inconsistencies. In addition, where the duties of the Connecticut Historical Commission are confusing, the bill defines them more accurately." Hearings before Joint Standing Committee on Planning & Development 1980 Sess., Pt. 1, p. 107 (remarks of Holly Schadler, Connecticut Preservation Action).

[6] "This bill would clarify and make a broad range of substantive and technical changes in the law governing the formation and operation of the historic districts created by municipalities. . . . [T]he bill would . . . clarify [the] existing statute concerning court actions for enforcement of the law and the disposition of fines." (remarks of Sen. Nancy L. Johnson), 23 S. Proc., Pt. 7, 1980 Sess., pp. 1977–78. For similar comments made during debate in the lower chamber of the General Assembly see 23 H. R. Proc., Pt. 19, 1980 Sess., p. 5467 (remarks of Rep. Joseph J. Farricelli).

No. 47, the provisions of that ordinance are inapplicable because the town council did not permit it to vote upon the establishment of the district. In the light of the legislative purpose of the 1980 revision of the historic district enabling act and the plain language of the provision, we interpret § 7-147k (a) as confirming the establishment of the Farmington Historic District despite the alleged defects in its adoption and as rendering obligatory the historic district regulations upon each parcel of real property included in the district by Ordinance No. 47. The basis for the plaintiff's complaint has been eliminated by an act of the General Assembly. The issue concerning whether it was properly excluded from participating in the balloting which established the district has thereby been rendered moot.

### III

The plaintiff bank contends that to conclude that the Farmington Historic District was lawfully established or that § 7-147k (a) renders its cause of action moot deprives it of equal protection of the law and due process, respectively, as guaranteed by the federal and state constitutions. We decline to review these claims, which are raised for the first time in this court. Where a legal claim is raised neither by oral argument nor by written brief in the court below,[7] "it will not be the duty of . . . the appellate court to decide the claim."

---

[7] The record and judgment file contain no evidence that either of these claims was ever brought to the attention of the trial court. No transcripts were filed in this appeal. Any equal protection objections to an unfavorable reading of General Statutes (Rev. to 1963) § 7-147b (g) and (1) were clearly foreseeable prior to trial. General Statutes § 7-147k became effective on October 1, 1980, prior to the rendering of judgment by the trial court on November 18, 1980. The plaintiff concedes that, although the trial court memorandum contained no reference to the validating statute, the defend-

Practice Book § 285A. The constitutional nature of these claims provides no basis for an automatic exception to the application of this rule of judicial discretion in civil actions. See *Edmundson* v. *Rivera,* 169 Conn. 630, 635–36, 363 A.2d 1031 (1975); *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 209, 355 A.2d 21 (1974); 16 Am. Jur. 2d, Constitutional Law § 131.

We find that the plaintiff's property is properly deemed part of the Farmington Historic District and subject to Ordinance No. 47, § 5, which requires a certificate of appropriateness from the historic district commission prior to the issuance of a demolition permit. Accordingly, we affirm the trial court's dismissal of the plaintiff's administrative appeal.

There is no error.

In this opinion the other judges concurred.

ants did raise the issue of the impact of that enactment in their post-trial briefs. The plaintiff, too, therefore, presumably had an opportunity to present its due process argument.