YALE LITERARY MAGAZINE ET AL. *v.*
YALE UNIVERSITY ET AL.
(2643)
(2959)

DUPONT, C.P.J., BORDEN and DALY, Js.

Argued March 13—decision released July 30, 1985

*John R. Williams,* with whom, on the brief, was *Sue L. Wise,* for the appellants (Andrei Navrozov and American Literary Society, Inc.).

*William J. Doyle,* with whom was *Mark R. Kravitz,* for the appellees (defendants).

DUPONT, C.P.J. This appeal arises from a judgment rendered by the trial court in favor of Yale University and several of its officials (hereinafter Yale University) on their counterclaim, in which they sought an injunction to restrain the use of the name "Yale" in the title of a publication called "Yale Literary Magazine." To put the issues and the underlying facts in perspective, an examination of the procedural history of the present action is required. This action was originally commenced in 1982 by Andrei Navrozov and the Yale Literary Magazine. They sought injunctive relief against Yale University in connection with the continued use of the name "Yale" in the title of their publication. Specifically, an order was sought enjoining Yale University from requiring Yale Literary Magazine to register as an undergraduate organization.

Yale University answered, interposed special defenses, and counterclaimed against Navrozov and American Literary Society (hereinafter Society), the corporate publisher of Yale Literary Magazine. In 1983, the complaint was withdrawn. Thereafter, Society joined Navrozov in treating Yale University as the plaintiff in the action, by jointly filing an answer, special defenses and counterclaims to Yale University's supposed complaint. Two years prior to the commencement of this action, Yale University entered into an agreement with Navrozov and Society allowing them to continue to publish the Yale Literary Magazine provided they register as an undergraduate organization. Yale University's counterclaim was based upon the alleged breach of the terms of that agreement. Upon the trial of the action, the counterclaim of Yale University was treated as the complaint, and Yale University was considered the plaintiff.[1]

---

[1] To avoid confusion, throughout the course of this opinion the names of the parties will be used instead of the terms plaintiff and defendant.

On appeal, Navrozov and Society raise and brief ten claims of error.[2] They are whether the trial court erred (1) in striking the case from the jury docket, (2) in refusing to permit an attorney, licensed by another state, to be admitted pro hac vice, (3) in proceeding to trial where an appeal was taken from that refusal, (4) in granting Yale University injunctive relief in the absence of proof that an irreparable injury was sustained, (5) in applying general contract law to the agreement in question, (6) in finding that the agreement did not violate the rule against perpetuities, (7) in rulings on the evidentiary claims pressed by the parties, (8) in failing to decide whether the special defenses interposed of impossibility of performance and frustration of purpose were proven, (9) in issuing impermissibly broad injunctive relief, and (10) in finding facts not supported by the evidence. Many of the claims of error pressed do not require an extensive discussion.

Society and Navrozov claim that the trial court made various erroneous evidentiary rulings. No appellate review of those claims is possible. Practice Book § 3060F (d) (3).[3] The claim of error involving the special defenses of impossibility of performance and frustration of purpose are likewise not properly preserved for appellate review since the defendants failed to move for a further amplification or clarification from the trial court. *Newington* v. *General Sanitation Service Co.,* 196 Conn. 81, 84, 491 A.2d 363 (1985). The trial court's

[2] Their preliminary statement of issues raised thirty-nine issues. Those claims which have not been briefed are deemed abandoned. *County Federal Savings & Loan Assn.* v. *Eastern Associates,* 3 Conn. App. 582, 583 n.1, 491 A.2d 401 (1985). Two appeals were taken in this action. For the purposes of printing the record and oral argument the appeals were combined.

[3] Practice Book § 3060F (d) (3) provides in pertinent part: "When error is claimed in any other ruling in a court or jury case, the brief or appendix shall include . . . the question . . . the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; the ruling; and any exception."

memorandum of decision notes that Society's and Navrozov's special defenses included frustration of the contract. The trial court, in its memorandum of decision, expressly held that they failed to sustain their burden of proof as to all the special defenses. If they desired a further amplification or clarification of the trial court's decision on these points, they should have sought a further articulation from the trial court. Id. In the absence of such a request, the trial court did not err.

Society and Navrozov also claim that the trial court erred in granting Yale University injunctive relief in the absence of evidence establishing irreparable injury. Tied to this argument is the notion that the plaintiff is proceeding pursuant to a common law cause of action for unfair competition. See *Yale University* v. *Benneson,* 147 Conn. 254, 159 A.2d 169 (1960). Yale University's action sounds in contract and the special defenses interposed thereto concern contracts. Cases are reviewed on the theory upon which they are tried and decided. *Fuessenich* v. *DiNardo,* 195 Conn. 144, 151, 487 A.2d 514 (1985). The decisional law relevant to this matter involves the enforcement of contractual provisions restricting the use of a trade name. Injunctive relief in such situations has been granted. *Overhead Door Corporation* v. *Nathanson,* 291 F. Sup. 961, 963 (W.D.N.C. 1968); see *T & T Mfg. Co.* v. *A. T. Cross Co.,* 449 F. Sup. 813, 823–26, (D.R.I. 1978), aff'd, 587 F.2d 533 (1st Cir. 1978), cert. denied sub nom. *A. T. Cross Co.* v. *Quill Co.,* 441 U.S. 908, 99 S. Ct. 2000, 60 L. Ed. 2d 377 (1979); *Mozzochi* v. *Luchs,* 35 Conn. Sup. 19, 391 A.2d 738 (1977).

Society and Navrozov argue that clause 10 of the certificate of incorporation of Society, by which Yale University has the right to revoke Society's permission to use the "Yale" name, violates the rule against perpetuities. Society and Yale University are charitable

organizations and as such the rule against perpetuities does not apply to them. *City National Bank* v. *Bridgeport,* 109 Conn. 529, 544, 147 A. 181 (1929); *Pierce* v. *Phelps,* 75 Conn. 83, 86, 52 A. 612 (1902).

Society and Navrozov contend that the trial court misapplied the relevant law of contracts since it failed to account for the fiduciary capacity in which Yale University dealt with the other parties. This argument was not distinctly raised below and need not be reviewed. Practice Book §§ 3063, 285A; *Farmington Savings Bank* v. *Zoning Board of Appeals,* 189 Conn. 727, 739–40, 458 A.2d 1151 (1983).

Navrozov and Society claim the trial court erred in finding facts not supported by the evidence. Wholesale attacks on the trial court's finding of facts have been repeatedly criticized by this state's appellate courts. *Toffolon* v. *Avon,* 173 Conn. 525, 527, 378 A.2d 580 (1977); *Dick* v. *Dick,* 167 Conn. 210, 212, 355 A.2d 110 (1974); *American Frozen Foods, Inc.* v. *International Brotherhood of Teamsters,* 3 Conn. App. 300, 301–302, 487 A.2d 570 (1985). In this case, the facts found by the trial court were supported by the evidence.

Society and Navrozov argue that the trial court was divested of its jurisdiction in the present action when they appealed the trial court's refusal to admit an out of state attorney to appear pro hac vice. Their claim is that the trial court committed error in proceeding to a trial on the merits. Yale University claims that the refusal to admit an out of state attorney to appear pro hac vice is not an immediately appealable order and that, even if the order was immediately appealable, the stay of execution provided in Practice Book § 3065 does not apply to this situation. It further argues that even if an appellate stay applied to this situation, the trial

of the action was harmless error since the trial court held that the appeal was frivolous and taken only to delay the proceedings.

The threshold question of the immediate appealability of such an order must first be addressed because challenges to the trial court's jurisdiction to hear a matter must be resolved before considering the other issues presented on appeal. See *Sullivan* v. *Board of Police Commissioners,* 196 Conn. 208, 213, 491 A.2d 1096 (1985).

Society and Navrozov rely on *Silverman* v. *St. Joseph's Hospital,* 168 Conn. 160, 363 A.2d 22 (1975), as authority for the proposition that the denial of a motion for an attorney to appear pro hac vice is immediately appealable. Our Supreme Court's denial of a motion to dismiss for lack of a final judgment filed in response to an appeal from the denial of a pro hac vice motion is also relied upon. *Penebre* v. *Eli Lilly & Co.,* No. 11864 (1983) (unreported order on motion to dismiss, appeal later withdrawn); see Moller & Horton, Connecticut Practice (8th Ed. 1985), p. 44.

In *Silverman* v. *St. Joseph's Hospital,* supra, 169–70, the court expressed its reluctance to entertain an appeal from the denial of such a motion but addressed the merits of the claim due to the unique circumstances involved in that action. That *Silverman* is not authority for the proposition that the denial of a motion to appear pro hac vice is immediately appealable is revealed by the court's following comment: "If that judgment was a final judgment, then the time for filing the appeal was under the provisions of § 601 of the Practice Book limited to twenty days. If, on the other hand, the appeal is considered to be permissible under the provisions of § 604 of the Practice Book as a judgment disposing of part of the issues, it was incumbent upon the plaintiff to file notice of the appeal within

twenty days. A notice of appeal was not filed until May 23, 1973, almost exactly a year late. Despite the existence of all of these complications, we have, not without considerable hesitation and reluctance, decided to entertain the present appeal." Id., 169–70.

The reliance on the summary denial of a motion to dismiss an appeal taken from a trial court's refusal to admit an attorney pro hac vice is misplaced. Our Supreme Court, just recently, summarily denied a motion to dismiss appeals for lack of final judgments, but decided to dismiss those appeals because of the absence of a final judgment after oral argument on the merits was presented. *Pendiman Corporation* v. *White Oak Corporation,* 195 Conn. 393, 397 n.2, 488 A.2d 449 (1985).

Since *Silverman* v. *St. Joseph's Hospital,* supra, was decided, Connecticut's appellate courts have reviewed a ruling on the denial of a motion to appear pro hac vice after a judgment on the merits in the action was rendered. *Enquire Printing & Publishing Co.* v. *O'Reilly,* 193 Conn. 370, 477 A.2d 648 (1984); *State* v. *Reed,* 174 Conn. 287, 386 A.2d 243 (1978); *State* v. *Moffett,* 38 Conn. Sup. 301, 444 A.2d 239 (1981). Jurisdictional challenges based on the timeliness of appealing such an issue were not interposed in those cases. Practice Book §§ 3000 and 3001. Consequently, whether such an order is immediately appealable was not addressed in those cases, although in *Enquire Printing & Publishing Co.* v. *O'Reilly,* supra, a claim was advanced, on different grounds, that the trial court's ruling on the pro hac vice motion was not properly before the court.

In *Enquire Printing & Publishing Co.* v. *O'Reilly,* supra, the court readily analogizes to the decisional law within the state on the disqualification of counsel in an

action. Subsequent to the decision in the latter case, the United States Supreme Court decided the question of the appealability of a trial court order disqualifying counsel in a criminal matter, and held that it was not immediately appealable. *Flanagan* v. *United States,* 465 U.S. 259, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984). Previously there had been a split among the United States Circuit Courts of Appeals on this issue. The Second Circuit had held the disqualification of counsel was immediately appealable. *United States* v. *Curcio,* 694 F.2d 14 (2d Cir. 1982). Connecticut has previously followed the decisional path of the United States Supreme Court on the denial of a motion to disqualify counsel. *State* v. *Rapuano,* 192 Conn. 228, 229 n.1, 471 A.2d 240 (1984); *State* v. *Powell,* 186 Conn. 547, 552 n.8, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut,* 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982). In fact, the latter case extended the holding in *Firestone Tire & Rubber Co.* v. *Risjord,* 449 U.S. 368, 373–79, 101 S. Ct. 669, 66 L. Ed. 2d 571 (1981), where the Supreme Court held that the denial of a motion to disqualify counsel in a civil action was not immediately appealable, to disqualifications in criminal actions as well as civil actions. Subsequent to the decision in *Flanagan,* the United States Supreme Court held that disqualification of counsel in a civil proceeding because of a trial court's revocation of counsel's admission to appear pro hac vice was not immediately appealable. *Richardson-Merrell, Inc.* v. *Koller,* 472 U.S. 424, 105 S. Ct. 2757, 86 L. Ed. 2d 340 (1985). Connecticut has not distinguished the denial of a motion to disqualify an attorney on the basis of whether the proceeding is civil or criminal in the context of deciding the appealability of such a ruling. *State* v. *Rapuano,* supra, 229 n.1. "The granting of a motion to disqualify an attorney is . . . an appealable final judgment." Id. The court relies on two decisions on that issue in the context of a civil proceeding for authority for the proposition that a dis-

qualification in a criminal proceeding is an appealable final judgment. Connecticut historically has not distinguished cases on the basis of whether they are a criminal or a civil proceeding in concluding whether an immediate appeal lies from the trial court's action on a motion to disqualify.

In light of the United States Supreme Court's opinions in *Flanagan* v. *United States,* supra, and in *Richardson-Merrell, Inc.* v. *Koller,* supra, this court, therefore, believes that the Connecticut Supreme Court would, as it has in the past, change its position on the appealability of a disqualification of an attorney. The interest of a litigant affected by the denial of a motion pro hac vice and the granting of a disqualification of an attorney are identical. Both involve the loss of the right to employ counsel of one's choice and, therefore, if one is not immediately appealable then neither is the other. See *DiLuzio* v. *United Electrical, Radio & Machine Workers of America, Local 274,* 391 Mass. 211, 461 N.E.2d 766 (1984). Counsel for Society and Navrozov at oral argument analogized a motion to disqualify to a motion pro hac vice.

Further, an otherwise interlocutory order is solely appealable "(1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983). Although this test was articulated in the context of an interlocutory appeal in a criminal proceeding, it has been applied with equal force to civil proceedings. *Barbato* v. *J. & M. Corporation,* 194 Conn. 245, 247–48, 478 A.2d 1020 (1984). Federal appellate procedure similarly limits immediate appellate review of interlocutory orders. In federal practice, the trial court's interlocutory order to be subject to immediate appel-

late review must satisfy at least three conditions. "First, it 'must conclusively determine the disputed question'; second, it must 'resolve an important issue completely separate from the merits of the action'; third, it must 'be effectively unreviewable on appeal from a final judgment.' " *Flanagan* v. *United States,* supra, 1055. The United States Supreme Court held that the disqualification of counsel is not immediately appealable because it does not resolve an issue completely separate from the merits of the action. *Richardson-Merrell, Inc.* v. *Koller,* supra; *Flanagan* v. *United States,* supra.

The denial of a motion pro hac vice consequently does not terminate a separate and distinct proceeding. The three decisions of this state's appellate courts which consider, after a trial on the merits, the trial court's denial of a motion to admit an attorney pro hac vice dispel any notion that such an order falls within the purview of the second criterion in *Curcio*. Since we conclude that an immediate appeal does not lie from the trial court's refusal to admit an attorney pro hac vice, we also conclude that the trial court had jurisdiction to proceed to the trial on the merits. It is unnecessary to consider the other alternative grounds proffered by Yale University on which the trial court's action may be upheld.

The defendant also claims that the trial court erred in refusing to allow an out-of-state attorney to appear pro hac vice. A request to appear pro hac vice should be granted "unless some legitimate state interest is thwarted by admission of the out-of-state attorney." *Enquire Printing & Publishing Co.,* v. *O'Reilly,* supra, 375.

Certain facts are relevant to this issue. The present action was commenced in the fall of 1982 by Navrozov. After the action had proceeded for about six months,

Navrozov dismissed the Connecticut counsel who had commenced the action and retained other Connecticut counsel who substantially altered the state of the pleadings. Prior to the new local counsel entering the case, Robert D'Agostino had acted as a consultant to the former counsel. In October of 1983, on the eve of trial, the motion to allow D'Agostino to appear pro hac vice was denied by the court.

D'Agostino's affidavit in support of the motion discloses that he is a member in good standing of two state bars, that he has served as a consultant to attorneys practicing in seven states, that he acted only as a consultant to other attorneys and did not accept private clients, although here he was willing to join as cocounsel. The local counsel's affidavit in support of the motion avers that he believes this action can not be fairly tried by one attorney, that D'Agostino has a specialized knowledge of the law involved in this case, that the clients are unable to pay any further legal expenses, and that the legal services provided by D'Agostino are on a pro bono basis.

The transcript of the hearing on the motion reveals that D'Agostino was a professor of law, whose contractual relationship with his employer prevented him from working directly with clients. The trial court rendered a decision from the bench denying the motion. It then stated that it had concluded, after examining the pleadings in the action and listening to arguments pressed by local counsel, that it was quite impressed with the local counsel's capabilities.[4] The trial court also denied

---

[4] The appellate counsel in his brief has made numerous derogatory remarks about the skill and character of the local counsel who tried the case in the trial court, all of which are totally unsubstantiated by anything in the record. He has also included unfounded derogatory remarks about the trial judge. Comments such as these have no place in appellate practice, and cannot be tolerated. Practice Book § 3096; *Pradlik* v. *State*, 131 Conn. 682, 683 n.1, 41 A.2d 906 (1945); *Pierce* v. *Norton*, 82 Conn. 441, 442 n., 74 A. 686 (1909).

a request to permit D'Agostino to sit at counsel table since Yale University's counsel objected to that procedure.[5]

Navrozov and the Society attack the trial court's conclusion that pursuant to Practice Book § 24[6] they failed to show good cause for the granting of the motion. Nonetheless, they did not move for further articulation or clarification of the trial court's ruling pursuant to Practice Book § 3082. See *Newington* v. *General Sanitation Service Co.*, 196 Conn. 81, 84, 491 A.2d 363 (1985).

The trial court's resolution of this issue was draconian since it denied the request to allow D'Agostino to sit at counsel table and, immediately thereafter, in response to a request by the local counsel for a short recess to consult with D'Agostino, declared such interruptions in the flow of the case would not be tolerated.

---

[5] A denial of a pro hac vice motion does not preclude the granting of a request to allow out-of-state counsel to sit at the counsel table. *State* v. *Reed*, 174 Conn. 287, 386 A.2d 243 (1978).

[6] Practice Book § 24 provides: "An attorney who is in good standing at the bar of another state, the District of Columbia, or the commonwealth of Puerto Rico, may, upon special and infrequent occasion and for good cause shown upon written application presented by a member of the bar of this state, be permitted in the discretion of the court to participate to such extent as the court may prescribe in the presentation of a cause or appeal in any court of this state; provided, however, that a member of the bar of this state must be present at all proceedings and must sign all pleadings, briefs and other papers filed with the court and assume full responsibility for them and for the conduct of the cause and of the attorney to whom such privilege is accorded. Where feasible, the application shall be made to the judge before whom such cause is likely to be tried. Good cause for according such privilege shall be limited to facts or circumstances affecting the personal or financial welfare of the client and not the attorney. Such facts may include a showing that by reason of a long-standing attorney-client relationship predating the cause of action or subject matter of the litigation at bar, the attorney has acquired a specialized skill or knowledge with respect to the client's affairs important to the trial of the cause, or that the litigant is unable to secure the services of Connecticut counsel."

The legitimate state interest thwarted by the admission of an out-of-state attorney, sufficient to overcome the litigant's right to have counsel of his choice, generally involves ethical problems caused by allowing out-of-state counsel to appear. In *Enquire Printing & Publishing Co.* v. *O'Reilly,* supra, 374–75, the court provided citations to cases demonstrating a legitimate state interest. Two of those cases, *State* v. *Rapuano,* supra, and *United States* v. *Curcio,* supra, concerned possible violations of Disciplinary Rules of the Code of Professional Responsibility. *Enquire* also involves a denial upheld on that same ground. The other example of a legitimate state interest proferred in that case is the control of the court's docket. *United States ex rel. Spurlark* v. *Wolff,* 683 F.2d 216, 220 (1982), aff'd in part, rev'd in part, 699 F.2d 354 (7th Cir. 1983). Here, the record does not reveal that the admission of D'Agostino would have adversely affected the trial court's control of its docket, and does not, on its face, present a legitimate state interest which would be served by denying the motion to appear pro hac vice. The trial court, therefore, erred in denying the motion.

Whether a civil litigant's right to counsel is constitutionally protected, as intimated in *Enquire Printing & Publishing Co.* v. *O'Reilly,* supra, therefore causing the erroneous denial of a pro hac vice motion to be harmful error per se; see *State* v. *Washington,* 182 Conn. 419, 429, 438 A.2d 1144 (1980); need not be decided in this case. Navrozov, a party to the lawsuit, chairman of the board and chief operating officer of Society, refused to testify because of the court's denial of the motion, despite being subpoenaed by Yale University. The Massachusetts Supreme Judicial Court has addressed the constitutional argument suggested in *Enquire Printing & Publishing Co.* v. *O'Reilly,* supra, 374 n.8, protecting a civil litigant's choice of counsel and found the argument unpersuasive where the litigant has effective access to the courts through

representation by local counsel. *DiLuzio* v. *United Electrical, Radio & Machine Workers of America, Local 294,* supra, 219; see *Thoma* v. *A.H. Robins Co.,* 100 F.R.D. 344 (D.N.J. 1983); annot., 20 A.L.R.4th 855.

In light of the action of Navrozov in refusing to testify, this court cannot say that the error affected the result. *Manning* v. *Michael,* 188 Conn. 607, 611, 452 A.2d 1157 (1982). Navrozov, as an officer and director of the corporation, has a fiduciary relationship with the corporation and its stockholders. *Pacelli Bros. Transportation, Inc.* v. *Pacelli,* 189 Conn. 401, 407, 456 A.2d 325 (1983). The actions of Navrozov as a fiduciary are binding on those he represents. *Pavlinko* v. *Yale-New Haven Hospital,* 192 Conn. 138, 147, 470 A.2d 246 (1984). This sanction applies to the corporation as well as to Navrozov individually. Id. The error of the trial court under these circumstances was harmless.

Society and Navrozov also argue that the trial court erred in striking the present action from the jury docket. The parties agree that the trial court correctly relied on *Franchi* v. *Farmholme, Inc.,* 191 Conn. 201, 464 A.2d 35 (1983). That case provided: "The United States constitutional guarantee of a right to a jury trial established by the seventh amendment applies only in the federal courts." Id., 209 n.11. Under the Connecticut constitution, only where distinct issues triable to a jury in 1818 are presented in an equitable action is there a constitutional right to a jury trial. Id., 210.

"Our case law has spoken to the resolution of factual issues in the context of actions essentially equitable or essentially cognizable at law. In *National Bank of Commerce of New London* v. *Howland,* [128 Conn. 307, 310, 22 A.2d 773 (1941)], we said: 'Where incidental issues of fact are presented in an action essentially equitable, the court may determine them without a jury in the exercise of its equitable powers. *Doris* v.

*McFarland,* 113 Conn. 594, 608, 156 Atl. 52 [1931]. Where, however, the essential basis of the action is such that the issues presented would be properly cognizable in an action at law, either party has a right to have the legal issues tried to the jury, even though equitable relief is asked in order to give full effect to the legal rights claimed; *Berry* v. *Hartford National Bank & Trust Co.,* 125 Conn. 615, 618, 7 Atl. (2d) 847 [1939]; *LaFrance* v. *LaFrance,* 127 Conn. 149, 152, 14 Atl. (2d) 739 [1940] . . . .' " *Franchi* v. *Farmholme, Inc.,* supra, 210–11.

Yale University's action seeks specific performance of the contract which is essentially an equitable remedy. *Dick* v. *Dick,* 167 Conn. 210, 221–22, 355 A.2d 110 (1974). Further, Yale University sought relief into the future. The action was equitable in nature. Id. The trial court did not err in finding that Yale University's action was not triable to a jury as a matter of right.

Society and Navrozov interposed special defenses to Yale University's action and also made various claims against Yale University. An examination of the pleadings filed by Society and Navrozov reveal the action was essentially equitable. They interposed a special defense alleging fraud, an equitable defense. 27 Am. Jur. 2d., Equity § 20. In addition, they asserted an equitable defense alleging duress or undue influence. 27 Am. Jur. 2d, Equity § 22. Their claim that a defense of lack of consideration here interjected an issue triable to the jury is disposed of by *Dick* v. *Dick,* supra, 224–27. Further, an examination of Society's and Navrozov's action against Yale University fails to reveal any distinct issues triable to a jury which were presented in this essentially equitable action. The trial court, therefore, did not err in striking the case from the jury docket.

There is no error.

In this opinion the other judges concurred.