PETER PAVLINKO *v.* YALE-NEW HAVEN HOSPITAL ET AL.
(11361)

SPEZIALE, C. J., PARSKEY, SHEA, SPONZO and MENT, Js.

Argued November 3, 1983—decision released January 31, 1984

*Robert T. Harrington,* with whom, on the brief, was *Robert D. Mercer-Falkoff,* for the appellant (plaintiff).

*William B. Rush,* for the appellees (named defendant et al.).

*Michael P. Del Sole,* for the appellees (defendant Yale University School of Medicine et al.).

PARSKEY, J. The issue presented by this case is whether dismissal of a malpractice action is appropriate because of the refusal of the plaintiff to answer questions at a deposition concerning the removal, custody and control of the hospital records pertaining to the plaintiff's decedent. On the facts of this case we hold that dismissal is an appropriate sanction.

The plaintiff, as administrator of the estate of his wife, Julie Pavlinko, brought the present action against the Yale-New Haven Hospital, the Yale University School of Medicine and certain individual physicians alleging that the defendants were negligent in the care and treatment of his wife during the period from December 4, 1978, until the date of her death on January 11, 1979. Following the death of the plaintiff's decedent, original hospital records belonging to the Yale-New Haven Hospital were missing from the hospital and were not returned to the hospital for a period of two years. Thereafter, the defendants filed interrogatories directed to the plaintiff which sought to elicit information relating to the possession and control of the original hospital records during the period in question. The plaintiff answered those interrogatories under oath indicating that he obtained possession and control of the original hospital records by taking them from the hospital, and that he had them in his possession and control from on or about January 12, 1979, to on or about February 6, 1981.

On August 13, 1981, the defendants examined the plaintiff under oath at a deposition held pursuant to notice. Portions of that deposition were concerned with attempts to establish the integrity and reliability of the hospital records admittedly taken from the hospital by the plaintiff. Accordingly, at the deposition the plaintiff was asked a number of questions[1] which he refused to answer under the sole claim of privilege against self-

---

[1] Examination by William B. Rush:

"Q. Now, did there come a time, sir, when you removed some hospital record from the—

"Mr. Sullivan: Object. I instruct the witness not to answer.

\* \* \*

"Q. Now, were those answers that were given to question sixty-seven and sixty-eight appearing on pages 16 and 17 of your cited answers to your interrogatories, are they true and correct?

"Mr. Sullivan: I'm going to object and instruct the witness not to answer for the same reason as previously stated.

"Q. Did you read those answers, sir, before you signed the certification that appears on page 21? I believe it's page 21. Yes.

"A. Did I read these answers—

"Q. Before you signed it, or before you certified that the answers were read and true and correct to your knowledge.

"A. I guess, if my signature is on there.

"Q. Did you, sir, or any member of your family or any person acting in your behalf, at any time have possession and control of any portion of the hospital records relating to your wife at any time after her death?

"Mr. Sullivan: Objection, and ask the witness not to answer for the same reason as stated before, limited to medical records, except for x-rays.

\* \* \*

"Q. Sir, are you aware that your counsel turned over certain records, hospital records, relating to your wife to personnel representing the Yale-New Haven Hospital sometime after your wife's death?

"A. Yes.

"Q. And were those records that you had taken from the hospital?

"Mr. Sullivan: Objection and instruct the witness not to answer, with the exception of any part of that question that may be directed to x-ray plates.

"Q. Do you know where your counsel obtained those records that he turned over to personnel of the Yale–New Haven Hospital?

"Mr. Sullivan: Objection and instruct the witness not to answer for the same reason. I'm not going to open the door and waive the fifth amendment privilege.

\* \* \*

incrimination. At no time did the plaintiff object to the questions on the ground of immateriality nor at any time did he seek a protective order from the court precluding inquiry into the area covered by these questions. Practice Book § 221.

"Q. Did you or any member of your family, sir, remove any records from the Yale-New Haven Hospital?

"Mr. Sullivan: Objection and instruct the witness not to answer.

* * *

"Q. And did you remove any other records from the Yale-New Haven Hospital record other than x-ray plates?

"A. I think I refuse to answer that one.

"Mr. Delsole [sic]: You think what?

"The Witness: I refuse to answer that.

* * *

"Q. When did you obtain these records?

"Mr. Sullivan: I'll object to that and ask the witness not to answer, instruct him, if you like, not to answer for the same reason that I advanced earlier.

* * *

"Q. Did you have possession and control of the hospital record, or a portion of the hospital records relating to your wife from on or about January 12, 1979 to on or about February 6, 1981?

"Mr. Sullivan: Object and instruct the witness not to answer.

* * *

"Q. According to your answers to disclosure, particularly question sixty-seven and sixty-eight appearing on pages 16 and 17 of your answers to disclosure, in which you have certified that you've read and that they are true and correct, and you have testified that you did read them, that they are true and correct, you have indicated that you obtained possession and control of a portion of the hospital record and that they were in your possession and control from on or about January 12, 1979 to on or about February 6, 1981. I'll ask you whether that is correct.

"Mr. Sullivan: Object and instruct the witness not to answer, except with respect to x-ray plates.

"Q. Did you ever give, or did you or any member of your family ever give any portions of the Yale-New Haven Hospital record relating to your wife to any other person or persons?

"Mr. Sullivan: Object and instruct the witness not to answer.

* * *

"Q. Did you ever have in your possession, sir, laboratory reports, doctor's and nurse's logs, admissions and discharge forms from the Yale-New Haven Hospital?

Following the refusal of the plaintiff to respond to the questions, the defendants filed motions to dismiss the plaintiff's action. The motions to dismiss also contained an alternative request that the court order the plaintiff to respond to the questions asked at the deposition. The plaintiff, acting through his counsel,

"Mr. Sullivan: Objection and instruct the witness not to answer.

\* \* \*

"Q. So I gather that the answer is incorrect and that you did review or inspect hospital records relating to your wife prior to January 12, 1979?
"A. Yes.
"Q. Did you review or inspect them after January 12, 1979?
"Mr. Sullivan: Are you talking about—excuse me, if I can object to the form of your question, are you talking about a copy of the hospital record or are you talking about the hospital record itself?
"Mr. Rush: The hospital record itself.
"Mr. Sullivan: I object to that and instruct the witness not to answer for the same reason that I stated earlier.

\* \* \*

"Q. And did you take any of those records out of the hospital?
"Mr. Sullivan: Are you talking about subsequent to January 12, 1979?
"Mr. Rush: At any time.
"Mr. Sullivan: I object to the question and instruct the witness not to answer on the same grounds previously stated, as to the question as it applies after January 12, 1979.

\* \* \*

"Q. Did you at any time give anyone else possession of the records so that they would have the opportunity to make any marks or notations on the hospital record?
"Mr. Sullivan: Objection, instruct the witness not to answer.

\* \* \*

"Q. Did you have the opportunity to change, alter, delete, or destroy records, the original records of the Yale-New Haven Hospital after the date of death of your wife?
"Mr. Sullivan: I object to the question and instruct the witness not to answer as being a frivolous and self serving question. I'm offended by that question. Anyone who had the record—you had the opportunity to do that. Any employee of the hospital. The witness has already said that he knows of no tampering or alteration of the record. What you're simply trying to do is set the witness up for the purpose of going to court with a motion. I think that's unreasonable and unfair.

\* \* \*

steadfastly refused to answer any of the questions propounded at the deposition, and only volunteered to answer the questions after the court had dismissed the plaintiff's case based upon an outright refusal to answer the questions. There is nothing in the record before us to suggest nor does the plaintiff represent that at any time prior to the entry of the judgment of dismissal he indicated his willingness to answer the questions propounded to him at the deposition.

Any party may be compelled by notice to give a deposition. Practice Book § 246. The giving of the notice prescribed by § 244, unless modified by the court, constitutes an order to the deponent to appear at the time and place designated in the notice and to submit to examination and cross-examination as permitted at trial. Practice Book § 247. All questions, including those objected to, are to be answered; Practice Book § 247 (b); unless the objecting party procures from the court a protective order precluding or limiting the scope or disclosure of discovery. Practice Book § 221.

---

"[Examination by Dominic Del Sole:]

"Q. Mr. Pavlinko according to your answer to this disclosure, specifically question sixty-eight initial C wherein it states, 'the dates as to which such person had such possession or control of such hospital records.' Your answer was, 'on or about January 12, 1979 to on or about February 6, 1981.' That was the answer that you made in that disclosure. Now, I ask you, were the records taken on January 12, 1979?

"Mr. Sullivan: Objection and instruct the witness not to answer.

"Q. Were they taken before January 12, 1979?

"Mr. Sullivan: Objection and instruct the witness not to answer.

\* \* \*

"Q. At any rate, you do admit you had possession of the record?

"Mr. Sullivan: Objection and instruct the witness not to answer.

"Q. Did anyone else, to your knowledge, have possession of that record?

"Mr. Sullivan: Objection and instruct the witness not to answer.

"Q. Did anyone else have an opportunity to in any way remove any portions of that record?

"Mr. Sullivan: Objection and instruct the witness not to answer.

"Q. Did anyone have any opportunity to alter it in any way?

"Mr. Sullivan: Objection and instruct the witness not to answer."

In the event of a party's failure to answer any or all questions at a deposition the court may make such order as the ends of justice require. Practice Book § 231. Possible sanctions may include (1) the entry of a nonsuit or default; (2) an award of costs including attorney's fees; (3) an order that certain facts shall be taken as established; (4) an order that certain evidence shall be excluded; and (5) the entry of a judgment of dismissal. Factors to be considered in determining an appropriate sanction are (1) the cause of the deponent's failure to respond to the posed questions, that is, whether it is due to inability rather than the willfulness, bad faith or fault of the deponent; *Societe Internationale Pour Participations Industrielles* v. *Rogers,* 357 U.S. 197, 212, 78 S. Ct. 1087, 2 L. Ed. 2d 1255 (1958); (2) the degree of prejudice suffered by the opposing party, which in turn may depend on the importance of the information requested to that party's case; and (3) which of the available sanctions would, under the particular circumstances, be an appropriate response to the disobedient party's conduct.

Of all the sanctions available to the court only dismissal was viable in the circumstances.[2] An order of nonsuit would have been completely ineffectual. Since the plaintiff could have brought a new action within a year of the nonsuit; General Statutes § 52-592 (a); the

---

[2] The dissenting opinion suggests that the appropriate response to the plaintiff's recalcitrance is his removal as administrator by the Probate Court accompanied by a delay in the prosecution of the present litigation pending the appointment of his successor. This is a curious suggestion. The problem in this case is that the defendants have been hampered in preparing their defense to a serious allegation of malpractice by the facts that for more than two years vital documents pertinent to that defense have been removed from their possession and control and the person who took them has been unwilling to cooperate fully by accounting for their absence. His removal as administrator does nothing to aid the defendants in their quest for information relating to the integrity of these documents, especially information concerning those persons who may have had access to the materials during the removal period. Rather than resolve the problem, the

result would be to postpone the issue to a later date. An award of costs including attorney's fees would have some effect but could hardly be expected to produce the requested information. An order establishing facts or precluding evidence would be inapplicable to the problem at issue here. Dismissal, then, being the only feasible alternative, the only remaining question is whether the judgment should have been rendered forthwith or only after the refusal to respond to an order of compliance.

The plaintiff's refusal to respond in this case, though under a claim of right, was intentional. We shall consider shortly the plaintiff's stated reason for his recalcitrance. Suffice it to observe at this point that if the disobedient party's refusal to testify is intentional, if a sufficient need for the information requested is shown by the opposing party, and if it does not appear that the disobedient party, having failed to comply with the order embodied in the rules, is inclined to change his position, then dismissal is an appropriate sanction. In such situations dismissal serves not only to penalize those whose conduct warrants such a sanction but also to deter those who might be tempted to such conduct in the absence of such deterrent. *National Hockey League* v. *Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976).

The plaintiff argues that before dismissing the case, the court should have ordered him to answer the questions in issue. This argument would be more persuasive if the plaintiff had expressed a willingness to

plaintiff's replacement would tend to exacerbate it. As a nonparty witness the plaintiff would be free to resist the defendants' inquiry under the same claim of privilege. At the same time the new administrator presumably would be free to pursue the malpractice action without assuming any of the consequences of the witness' reticence. If appropriate sanctions are not imposed for frustration of the discovery process then the practice tends to become contagious, in which event the dissenter's suggested cure may turn out to be worse than the disease.

comply with such an order. The defendants moved for a dismissal or in the alternative for an order of compliance. There is nothing in the record before us to suggest, nor does the plaintiff aver, that at the hearing on the motion he represented to the court that, if so ordered, he would respond to questions which he refused to answer at the deposition under a claim of privilege. Faced, then, with the plaintiff's assertion that he had a right to deny to the defendants answers to pertinent questions about the missing records while, at the same time, pursuing his malpractice action against them, the court properly exercised its discretion in favor of dismissing the action.

The plaintiff contends that he had a right to assert his privilege against self-incrimination. Granted. The critical question, however, is whether such assertion can be advanced at the expense of an opposing party in a civil action. Having been haled into court by the plaintiff the defendants had a right to resort to discovery in order to prepare their defense. Of critical importance to that defense were the original hospital records. That these records had been taken from the hospital by the plaintiff and had been kept by him or were under his control for more than two years suggested the possibility that they may have been tampered with in some fashion. The plaintiff's responses during the deposition to questions about the condition of the records were not completely informative. However sincere the plaintiff may have been in claiming the privilege, the effect of such assertion was to severely limit the scope of the inquiry and thus to make the defendants the innocent victims of the plaintiff's self-created predicament. In these circumstances it is not unfair to compel the plaintiff to choose between silence and the pursuit of his malpractice claim.

The privilege against self-incrimination is a constitutional shield against a person being compelled to convict himself out of his own mouth. It may not be used

as a sword to deny others information which is rightfully theirs. A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action. *Stockham* v. *Stockham,* 168 So. 2d 320, 321 (Fla. 1964). A plaintiff who exercises his privilege against self-incrimination to refuse to answer questions pertinent to the issues involved in a civil action risks having his complaint dismissed upon timely motion. *Bramble* v. *Kleindienst,* 357 F. Sup. 1028, 1036 (D. Colo. 1973); *Kisting* v. *Westchester Fire Ins. Co.,* 290 F. Sup. 141, 149 (W.D. Wis. 1968); see *Brown* v. *United States,* 356 U.S. 148, 160, 78 S. Ct. 622, 2 L. Ed. 2d 589, reh. denied, 356 U.S. 948, 78 S. Ct. 776, 2 L. Ed. 2d 822 (1958) (Black, J., dissenting); annot., 4 A.L.R.3d 545.

It remains to consider the significance, if any, of the fact that the plaintiff brought the pending action not in his own right but rather as administrator of the decedent's estate. Although as the surviving spouse the plaintiff is entitled to a share of the decedent's estate; General Statutes § 45-273a; the situation would be the same if the plaintiff were only a fiduciary. The action brought by the plaintiff is for wrongful death. "While the right to bring suit for wrongful death is in the administrator, he does not act in his true capacity as administrator for the benefit of the estate but as agent or trustee for those beneficially interested." *Harris* v. *Barone,* 147 Conn. 233, 234, 158 A.2d 855 (1960). As such agent his actions with respect to pending litigation are binding on those whom he represents. *Link* v. *Wabash R. Co.,* 370 U.S. 626, 634, 82 S. Ct. 1386, 8 L. Ed. 2d 734, reh. denied, 371 U.S. 873, 83 S. Ct. 115, 9 L. Ed. 2d 112 (1962).

There is no error.

In this opinion SPEZIALE, C. J., SPONZO and MENT, Js., concurred.

SHEA, J. (dissenting). If the only person being penalized by the order of dismissal were the plaintiff administrator, who is also the husband of the deceased and, therefore, a probable beneficiary of the estate, I would be somewhat less concerned. The record, however, does not indicate who the beneficiaries may be and the law does not demand that a sanction be imposed which effectively deprives other possible beneficiaries of a valuable property right because of the misconduct of the one who initiated the action in their behalf. By invoking his privilege against self-incrimination in such a manner as to jeopardize the prosecution of the action brought in behalf of the estate, the plaintiff administrator indicated an obvious conflict of interests. He should have been removed by the Probate Court and prosecution of the action delayed until another administrator had been appointed. See *Carroll* v. *Arnold,* 107 Conn. 535, 542, 141 A. 657 (1928).

The only part of Practice Book § 231, the authority relied upon for the sanction of dismissal, which pertains to depositions, is the portion reading, "[i]f any party . . . has failed to appear and testify at a deposition duly noticed pursuant to this chapter . . . ." This provision may reasonably be construed to impose a duty on a party-deponent to answer all proper questions. A party at a deposition who refuses to answer ought, however, to have no less protection from punitive measures than a witness at a trial. See Practice Book §§ 985, 986, 988. Before any sanction may be imposed the court should direct the witness to respond to the particular question so that the witness becomes aware that his refusal is a violation of a court order and may reconsider his position. See Fed. R. Civ. Proc. § 37 (a). The record here is devoid of any such order by the court. There is no transcript of the hearing on the defendants'

motions, so we do not know exactly what transpired. It is undisputed, however, that the plaintiff was not present at the hearing and, therefore, had no chance, after the court indicated its view that the action might be dismissed, to reconsider his refusal to answer. Before the extreme sanction of dismissal should have been imposed the court should have afforded the plaintiff a reasonable opportunity to reevaluate his position in the light of the court's determination that the inquiries must be answered if the suit was to be maintained.

The plaintiff did withdraw his claim of a fifth amendment privilege once he became aware of the position taken by the court, as indicated by his subsequent motion to set aside the dismissal, which stated that "the plaintiff has always been willing to respond to these questions if so directed by the court, and the plaintiff now desires to amend his responses to the deposition by answering the subject questions." Whether he would have done so once the court overruled the objections raised by his counsel to the questions involved and ordered them to be answered the record does not disclose, because he was given no such opportunity. His attorney, who did attend the hearing on the defendants' motions, could not have waived his client's privilege. "While the rules give the court a wide choice of sanctions, courts have generally been unwilling to impose drastic sanctions, such as dismissal of the action, except as a last resort for flagrant violations." James & Hazard, Conn. Civ. Proc. (2d Ed.) § 6.14.

The fifth amendment privilege against self-incrimination is a fundamental constitutional right the invocation of which should occasion no penalty, civil or criminal, unless the necessities of justice dictate otherwise. "Even in circumstances where the defendant has demonstrated a strong interest in disclosure, an order requiring the plaintiff to choose between his

Fifth Amendment rights and dismissal will not be proper, except where other, less drastic, remedies are not available." *Black Panther Party* v. *Smith,* 661 F.2d 1243, 1272 (D.C. Cir. 1981). Here, where the record does not indicate that the court ever gave the plaintiff such a choice, the imposition of the dismissal sanction must be viewed as a punishment for exercising the privilege and not as a remedial measure necessitated by the interests of justice.

Accordingly, I dissent.