[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING RE: PLAINTIFF'S MOTION TO COMPEL (FILE #103) AND DEFENDANT'SOBJECTION AND MOTION FOR PROTECTIVE ORDER (FILE #104)
Plaintiff's six count complaint alleges the following facts. In May 1989, plaintiff and defendant entered into a partnership agreement (or "joint agreement," or "an arrangement") whereby they were to develop, as partners, computer software and programs, and market same for the financial benefit of the partnership, acting under the registered tradename of "The Nutcracker, Intelligent Software Co." Under the terms of the agreement, plaintiff was to develop and write software programs utilizing "a computer language called `C'," while defendant was to assist plaintiff, and to market the programs written by plaintiff. It was also agreed that the parties would market consulting and support services for their product line. Each party would own fifty percent of the partnership, and all profits were to be divided fifty percent to each. Plaintiff alleges that he pursued his partnership responsibilities and spent over three years writing and developing computer software and programs, as well as computer codes in the language "C", thereby completing the development of marketable software programming; further, that around May 1992, the plaintiff invested (or had invested) approximately six thousand dollars in said partnership. CT Page 12508
In the first count, plaintiff alleges that defendant, from around September 1992 to the present, breached the partnership agreement by "appropriating to defendant's sole use and benefit the software and programming developed and written by plaintiff;" and by "forming a corporation owned, controlled, and under the direction of defendant, and [by] wrongfully using the corporation to market or distribute said software and programming developed and written by the plaintiff, not for the partnership, but for the sole benefit of the defendant and his corporation." Plaintiff further alleges that defendant neglected to share partnership earnings and revenues, retained monies and rights for his "sole enrichment," and refused to account to plaintiff on the share of the earnings, profits, and contract rights to which plaintiff would be entitled under the terms of the partnership agreement, all inconsistent with the requirements of General Statutes Section 34-59.[1] Additionally, it is alleged that defendant refused and neglected to provide information concerning transactions using the software and programs developed and written by plaintiff, in violation of Section 34-58.[2]
In the second count, plaintiff alleges, based on essentially the same predicate facts set forth in count one, that defendant breached and violated fiduciary duties owed plaintiff by virtue of the partnership agreement or "arrangement." The third count alleges that defendant made knowingly false representations to plaintiff, which plaintiff relied on to his detriment, the defendant thereby breaching and violating the duties of the confidential relationship between the parties. In the fourth count, plaintiff asserts that defendant has converted, and misappropriated to his own use, the software programming developed and written by plaintiff; further, that defendant has converted to his own use the revenues, earnings, profits, and contract rights which defendant (and/or his corporation) have obtained from said software programming. The fifth count states that the software and computer programming written and developed by plaintiff constitutes trade secrets under General Statutes Section 35-51[3], having economic value, either actual or potential, which have been appropriated, misappropriated, and/or wrongfully used by defendant in that he has formed a corporation which he owns, controls and which is under his direction, and has used "said corporation to market and distribute said software and programming, not for the partnership, or for the plaintiff's benefit, but for the sole benefit of the defendant and his corporation." In this fifth count, plaintiff also alleges that defendant has misappropriated trade secrets by appropriating same CT Page 12509 for his own or his corporation's sole benefit and profit; and, by breaching a duty to maintain their secrecy, and limit their use, for the benefit of the partnership and plaintiff, in violation of Section 35-51. Further, that by refusing and neglecting to share revenues, earnings, and contract rights which defendant and his corporation obtained from the use of said trade secrets, by retaining such monies and rights for his sole enrichment and profit, and by refusing to account to plaintiff regarding his share of the earnings, profits, and contract rights, defendant violated Sections 35-51 and 35-53.[4] It is also alleged that defendant's claimed misappropriation of trade secret information was, and is, willful and malicious. The sixth count of the complaint asserts that the actions of defendant and his corporation constitute unfair methods of competition, unfair acts, and unfair practices in the conduct of trade or commerce, in violation of General Statutes Section 42-110b.[5]
In his prayer for relief, plaintiff seeks money damages, equitable relief, punitive damages, and attorneys' fees.
Defendant's answer denies all of plaintiff's material allegations, asserts certain special defenses (doctrine of unclean hands, adequate remedy at law), and sets forth a three count counterclaim. The first count of the defendant's counterclaim alleges that in November 1992, plaintiff intentionally, maliciously, and wantonly erased a program which had to be recreated by defendant at considerable cost in time and monetary expenditure. In the second count, defendant; alleges intentional interference with a business contract; in such regard, it is alleged that as a result of plaintiff's destruction of the software program, defendant contracted with another individual, Grames, to recreate that program, and, that plaintiff contacted Grames urging him not to contract with defendant, and not to recreate and complete the program, which intentional interference delayed defendant in his ability to market the software product. The third count of the counterclaim alleges that plaintiff's allegations of misappropriation of trade secrets against defendant were made in bad faith, thereby entitling defendant to attorneys' fees under Section 35-54.[6]
Relative to the motions that are now before the court, the documentation contained in the file indicates that plaintiff duly noticed the depositions of defendant and the non-party, Grames. It was stipulated that any objections during the deposition(s) would be reserved by the parties to the time of trial.[7] While CT Page 12510 being deposed, defendant, after conferring with counsel, declined to answer the last question in the following sequence:
 Q. Have you made money from use of Modex as at tool?
A. Yes.
Q. And how much have you made?
A. So far very little.
Q. How much is very little?
A. 7,500.
Q. And that was for. . .
 A. Northeast Utilities, I build model for them.
Q. And there has been nobody else?
A. No.
 Q. Are you working on it for anybody right now?
A. Yes.
Q. Who are you work with?
 A. No, I am not working for a specific company, I am developing an application.
 Q. Okay. And what is the application that you're developing? (It was at this point that defendant, after conferring with his attorney, declined to answer the question regarding the application he is currently developing).
In his motion to compel, plaintiff requests an order directing defendant to answer the question(s), in such manner as the court shall direct, and, for the payment of costs and CT Page 12511 attorney's fees related to the deposition and this motion. Defendant objects to the motion to compel, asks that it be denied, and requests a protective order directing that defendant not be required to disclose "the confidential trade secret information [being] sought." In support of the objection, defendant has filed (1) his own affidavit dated 7/5/94, and (2) a 10/14/90 confidentiality agreement executed by the parties at the time they began working together on the development of the software product.
With respect to civil discovery in general, Conn. Prac. Bk. Section 218 provides, as follows:
 In any civil action . . . where the court finds it reasonably probable that evidence outside the record will be required, a party may obtain . . . discovery of information or disclosure, production and inspection of papers, books or documents material to the subject matter involved in the pending action, which are not privileged . . . and which are within the knowledge, possession or power of the party . . to whom the discovery is addressed. Discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action and if it can be provided by the disclosing party . . with substantially greater facility that it could otherwise be obtained by the party seeking disclosure. It shall not be a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. (Emphasis added).
Our Supreme Court has stated that the "granting or denial of a discovery request rests in the sound discretion of the court;" however, the court's discretion is "limited . . . by the provisions of the rules pertaining to discovery . . . especially the mandatory provision that discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action. . ." (Emphasis in original). StandardTallow Corporation v. Jowdy, 190 Conn. 48, 57-59 (1983). CT Page 12512
Regarding depositions, Prac. Bk. Section 243 states:
 In addition to other provisions for discovery . . . any party who has appeared in a civil action . . . where the court finds it reasonably probable that evidence outside the record will be required, may, at anytime after the commencement of the action . . . take the testimony of any person, including a party, by deposition upon oral examination.
Any party may be compelled by notice, as prescribed by Prac. Bk. Section 244, to give a deposition, and the giving of such notice constitutes an order to the deponent to appear at the time and place designated and submit to examination and cross-examination as permitted at trial. Pavlinko v. Yale-New Haven Hospital,192 Conn. 138, 143 (1984); Prac. Bk. Sections 246 and 247. "All questions, including those objected to, are to be answered . . . unless the objecting party procures from the court a protective order precluding or limiting the scope or disclosure of discovery." Pavlinko v. Yale-New Haven Hospital, supra. Prac. Bk. Section 247(c) states: [a]t any time during the taking of the deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted . . . in such manner as to unreasonably annoy, embarrass, or oppress the deponent or party, the court . . . may limit the scope and manner of the taking of the deposition as provided in Sec. 221.[8]
Issuance of protective orders is governed by Prac. Bk. Section 221, providing as follows:
 Upon motion by a party from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by CT Page 12513 the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.
Prac. Bk. Section 221 substantially parallels Rule 26(c) of the Federal Rules of Civil Procedure and, therefore, federal precedents are germane. cf. Beta Squared, Inc. v. Thor Designs,8 CSCR 486 (1993); The Associated Construction Company Inc. v. Cityof Milford, 15 CLT 8 (2/20/89). Under federal law, "[t]the [[t]he] party seeking to bar a deposition must make a threshold showing that there is `good cause' that the protective order issue. Cooper v. Welch Foods, Inc., 105 FRD 4, 6 (W.D. N.Y. 1984); The Associated Construction Company, Inc. v. City ofMilford, supra.
Defendant contends that plaintiff, by undertaking to ascertain details of the application which defendant is currently developing, is seeking "proprietary, confidential business information without good cause." Plaintiff, on the other hand, maintains that the information sought at the deposition "was to determine what software application the Defendant was working on that used software . . . partially developed by the Plaintiff," and that "[f]ollow up questions resulting from the answer would have been timeframes of development, market for product, and potential income." Defendant argues that his refusal to answer the question was justified because (1) any answer would divulge confidential business information acquired after the association between the parties had ended, and (2) plaintiff could have obtained the information which he claims he is seeking by directly asking defendant whether any application(s) on which he is currently working have used software that was partially developed by plaintiff. Defendant argues that plaintiff can obtain the information sought without the necessity of having him (defendant) disclose his customer names or current development work. Defendant acknowledges that under relevant federal authorities, a parting seeking a protective order in this context must show (1) that the information sought rises to the level of a trade secret, and (2) that there is good cause to protect the information. Turick By Turick v. Yamaha Motor Corp. U.S.A.,121 FRD 32, 35 (S.D. N.Y. 1988). CT Page 12514
Several considerations are material with respect to whether information sought through discovery rises to the level of trade secret data; those considerations include: (1) the extent to which the information is known outside of the proprietor's business; (2) the extent to which it is known by employees and others involved in the particular business; (3) the extent of measures taken to protect the security of the information; (4) the value of the information to the proprietor and to competitors; (5) the amount of effort or money expended by the proprietor in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.[9] Defendant's affidavits states: (1) he has devoted all of his life work to the development of this software and these applications since May of 1989; (2) he is the sole person with comprehensive knowledge of the application he is currently working on; (3) he has not publicly announced who his customers or prospects are; (4) he has been fastidious in his efforts to maintain the confidentiality of this application, as he is with all of the software he has designed and developed; and, (5) he began work on this application well after any association he may have had with plaintiff, Paul Filstein. On October 14, 1990, these parties agreed, in writing, that the mutually developed software product was "based on the methodology provided" by defendant, and, that Paul Filstein would "not divulge, transmit, sell, or convey any information regarding this product without the knowledge and written consent" of defendant. On the quite limited material presented, it appears to the court that the information sought by plaintiff, regarding the current application being developed by defendant, is confidential, trade or commercial information possessed and maintained by the defendant; in the court's view, assessing such information for the isolated purpose of resolving these pre-trial motions, the information rises to the level of trade secret data.
As stated above, Conn. Prac. Bk. 218 provides that in a civil action a party may obtain information or documents "which are not privileged," and which are within the knowledge and possession of the other party. Under Connecticut law and the federal authorities, it does not seem that trade secret information constitutes privileged material beyond the scope of civil discovery. Coca-Cola Bottling Co. v. Coca-Cola Co., 107 FRD 288,292 (D.Del. 1985); Beta Squared, Inc. v. Thor Designs, supra;Michroteck International, Inc. v. Fair, 7 CSCR 1198 (1992). However, as also stated above, Prac. Bk. Section 221 indicates CT Page 12515 that for "good cause shown," the court may order that "a trade secret or other confidential research, development or commercial information not be disclosed or be disclosed only in a designated way . . ." Furthermore, General Statutes Section 35-55 directs that the court "preserve the secrecy of an alleged trade secret by reasonable means, which may include [the] granting [of] protective orders in connection with discovery proceedings, holding in camera hearings, sealing the records of the action and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval."
Under federal law, to successfully resist discovery of trade secret information, a party must first demonstrate that the information sought constitutes trade secret information; in the present case, it is concluded that defendant has done so. On the documentation presented, the court further concludes that disclosure of the information requested by plaintiff could be potentially, economically harmful to defendant's business interests. Under the federal rules, once the defendant has satisfied the aforesaid threshold requirements, the burden then shifts to the party seeking discovery to establish that disclosure of the information is relevant and necessary to the action. cf. Coca-Cola Bottling Co. v. Coca-Cola Co., supra at p. 292.
The gravamen of plaintiff's claims is that defendant, in breach of the original agreement, has wrongfully used, and is wrongfully using, the programs written and developed by plaintiff, to the economic benefit of defendant, and to the economic detriment of plaintiff. Through inquiries made of defendant at the deposition, plaintiff has undertaken to ascertain whether the formulation and preparation of defendant's current application(s) has involved the utilization of programming developed, in whole or in part, by plaintiff. Thus, it would appear to the court that such information is relevant, material, and reasonably necessary with respect to plaintiff's claims, and also with respect to certain of defendant's special defenses and counterclaims. The information sought is reasonably necessary for the preparation of plaintiff's case, wherein he is attempting to establish that defendant appropriated, and converted to his own use, software which the plaintiff prepared under their former business arrangement, and also to rebut the opposing position(s) asserted by the defendant.
It has been stated that "`orders forbidding any disclosure of CT Page 12516 trade secrets or confidential commercial information are rare'", and, that "discovery is virtually always ordered once the movant has established that the secret information is relevant and necessary." Coca-Cola Bottling Co. v. Coca-Cola Co., supra at p. 293 (authorities cited therein). Further, "[t]he balance between the need for information and the need for protection against the injury caused by disclosure is tilted in favor of disclosure once relevance and necessity have been shown." Id. And, any potential harm resulting from allowance of discovery is to be assessed in recognition of provisions contained within the rules of procedure providing for the entry of an appropriate protective order.[10] Id. Although it is clear that defendant certainly has strived to maintain the confidentiality of his current programming, the court is unable to conclude, on the information submitted, that the potential economic harm to defendant outweighs the need for disclosure of the requested relevant information.
Defendant, as stated, argues that plaintiff might simply inquire whether his programming was involved in defendant's current application(s). Under the discovery rule (Prac. Bk Section 218), where the information requested is reasonably calculated to lead to the discovery of admissible evidence, disclosure is proper. Sanderson v. Steve Snyder Enterprises,Inc., 196 Conn. 134, 139 (1985). With regard to depositions, Prac. Bk. Section 247(a) states that the "[e]xamination of deponents may proceed as permitted at trial." (Emphasis added). Once it is determined that the information being sought is relevant and necessary, it is this court's view that the deposing party's specific questions should not be judicially devised, limited, or constricted, at least on the present record before the court.
The documentation submitted by defendant establishes the proprietary, confidential nature of the commercial information on which plaintiff has undertaken to inquire at the subject deposition. It is concluded that defendant has established grounds for a partial protective order under Prac. Bk. Section 221.[11]
Connecticut and federal case law do not hold trade-secret information to be privileged or beyond the reach of civil discovery. The question(s) and information at issue are relevant and necessary to the prosecution of plaintiff's action. Therefore, plaintiff's motion to compel is granted (subject to entry of a protective order) to the extent that defendant is to CT Page 12517 answer the question(s) respecting the application(s) on which he is currently working. The remainder of the relief requested in plaintiff's motion to compel is denied.[12] Defendant's objection to the motion to compel is overruled.
Defendant's request for a protective order (modified) isgranted. In the documentation submitted, the parties have not addressed the terms of an appropriate, partial protective order; accordingly, the court having held that the information at issue is discoverable, the parties should be given the opportunity to negotiate the conditions to be included in the protective order within the framework of Prac. Bk. Section 221.[13] cf. Coca-ColaBottling Co. v. Coca-Cola Co., supra at p. 300.
Mulcahy, J.