[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before this court is the defendant's motion for sanctions pursuant to section 13-14 of the Connecticut Practice Book.
The pertinent factual background is as follows. In her complaint, dated May 22, 1998 the plaintiff claims that she was caused to slip and fall in a Stop Shop store on April 4, 1997 as a result of the negligence of the defendant. The plaintiff further claims that she injured her, left knee, left ankle, left shoulder, neck, left leg, left and right lower back and buttocks. On June 16, 1998 the defendant served interrogatories upon the plaintiff The plaintiff filed a notice of compliance with this discovery request on August 21, 1998. To the request for information about related injuries the plaintiff denied having been treated for related injuries within the ten year time period[1] At her deposition on February 16, 1999, however, the plaintiff acknowledged, for the first time, that in 1991 she had sustained injuries as a result of a fall that occurred in a J.C. Penny store. During the deposition, the plaintiff maintained that CT Page 4694 she only injured her right knee in the 1991 fall, though. The plaintiff also maintained that this was her only prior fall. The plaintiff also disclosed, during the course of the deposition that she had suffered a "mini stroke" in 1995, but claimed to have fully recovered from it. The plaintiff denied any other falls or injuries. The plaintiff supplemented her discovery compliance on August 30, 1999, but did not amend or change her response to the interrogatory requesting information about prior related injuries.
Jury selection was scheduled to begin in this matter on August 30, 1999. The defendant moved for a continuance in order to have the opportunity to obtain and review the health records of the plaintiff related to her 1991 fall. During a hearing on the record on that day, the court ordered plaintiff's counsel to provide defense counsel with authorizations for records from Dr. Ciardella and the Bradley Memorial Hospital on or before September 6, 1999. The court then instructed the parties to report back on October 6, 1999.
In early September, defense counsel requested that the plaintiff provide records and authorization for the approximately 20 medical treaters it was able to identify from the recently obtained medical records. On September 8, 1999, the defendant filed a Motion for Nonsuit in response to the plaintiff's failure to comply with the standard discovery requests. The plaintiff objected to the motion. On September 27, 1999 the plaintiff filed a Supplemental Motion for Nonsuit, claiming that the plaintiff had failed to comply with the August 30th court order. Counsel for the parties met with the judge in an in-chambers conference to discuss the discovery matters on October 12, 1999. The court scheduled a hearing to address the discovery issues on October 19, 1999. On October 13, 1999, plaintiff's counsel provided to defense counsel information regarding some of the plaintiff's prior health care providers.
At the hearing on October 19, 1999, the plaintiff testified that she treated with a physician in Meriden, Dr. Willet, regarding injuries to her neck, low back and left knee in 1991. The plaintiff also testified that she obtained the records and gave them to her attorney. Plaintiff's counsel acknowledged on the record that he did have the records in his office and agreed to provide them to the defendant. The hearing was suspended and continued to November 8, 1999. Plaintiff's counsel, in correspondence dated October 26, 1999, indicated that: "[i]n relation to the last hearing before Judge Levine, I can tell you CT Page 4695 that I am not in possession of any records of Dr. Willett therefore I have no records to provide to you". The November 8, 1999, hearing was continued because plaintiff's counsel had not produced the records he had agreed to provide on October 19. The matter was continued to December 27, 1999.
On November 10, 1999 plaintiff's counsel hand-delivered some medical records regarding the plaintiff's treatment from January 11, 1991 through August 18, 1992. These records indicated, notably, that the plaintiff had, in fact, treated as a result of her 1991 fall for injuries to her left knee, right knee, hip, low back, neck and left foot. Following the disclosure of these records, the plaintiff filed an Amended and Supplemental Compliance, amending her response to acknowledge her prior fall and subsequent injuries and to acknowledge injuries she suffered as a result of her stroke. The plaintiff also identified health care providers who treated her during the relevant period. The plaintiff did not, however, append any medical records.
Upon reviewing the medical records available, it became apparent to the defendant that the plaintiff had sustained injuries to her left knee in a fall in New York in 1979, as well. A complete list of treaters has not been forthcoming from the plaintiff nor has the defendant been furnished with a copy of the pertinent medical records. Additionally, upon reviewing the newly disclosed records the defendant learned, for the first time that in 1989 the plaintiff had been diagnosed with bilateral degenerative joint disease with crepitus in both knees.
The plaintiff filed an Objection to Defendant's Supplemental Motion for Nonsuit dated November 17, 1999. On December 23, 1999 the defendant filed a Supplemental Memorandum of Law In Support of Defendant's Motion for Nonsuit.
The December 27, 1999 hearing was concluded before this court during which the defendant's attorney argued that it was entitled to the granting of its motions because of the continued, intentional and flagrant violations of the discovery orders committed by the plaintiff. The defense counsel contended that the defendant had been irreparably prejudiced by the conduct of the plaintiff and her counsel. The defendant requested that this court enter a nonsuit; award costs and attorney's fees; enter a judgment of dismiss; and/or preclude the plaintiff from introducing any evidence regarding certain claimed injuries. Plaintiff's counsel, though not contesting most of the factual allegations made by the defendant, disputes that he or his client CT Page 4696 intentionally violated the orders of this court. Rather, plaintiff's counsel contends that any omissions were due to mistake, misunderstanding or misinformation. Plaintiff's counsel contends that he has made multiple efforts to secure the information requested by the defendant. Finally, the plaintiff also maintains that because this case has no firm jury trial date, there is no real prejudice to the defendant. Therefore, plaintiff's counsel argues against the granting of the defendant's motion.
To date, the defendant still does not have a complete list of the names and addresses of plaintiff's health care providers. Nor does it have a complete set of the medical records related to the care rendered to the plaintiff for her prior related injuries.
I. Sanctions for Discovery Abuses: Connecticut Practice Book § 13-14
This court must first determine if sanctions are necessary for the alleged discovery abuses. If this court finds that sanctions are merited then it must decide what the appropriate sanctions are. Connecticut Practice Book § 13-14 provides, in pertinent part that:
 "If any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead, or has failed to respond to requests for production or for disclosure . . . or has failed otherwise substantially to comply with any other discovery order made pursuant to Sections 13-6 through 13-11, the judicial authority may, on motion, make such order as the ends of justice require. Such orders may include the following: (1) The entry of a nonsuit or default against the party failing to comply; (2) The award to the discovering party of the costs of the motion, including a reasonable attorney's fee; (3) The entry of an order that the matters regarding which the discovery was sought or other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order; (4) The entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence; (5) If the party failing to comply is the plaintiff, the entry of a judgment of dismissal."
The appellate courts of Connecticut have mandated that, "careful attention must be paid to the prompt and orderly handling of discovery. Trial courts should not countenance CT Page 4697 unnecessary delays in discovery and should unhesitatingly impose sanctions proportionate to the circumstances." Osborne v.Osborne, 2 Conn. App. 635, 637 (1984); See also Biro v. Hill,231 Conn. 462 (1994) affirming the (granting of a non-suit based on plaintiff's failure to comply with three previously entered deadlines for compliance); and Elliss v. Ronning,11 Conn. App. 662 (1987) (affirming entry of non-suit based on plaintiff's failure to complete interrogatories).
A. The Plaintiff Failed to Comply with Discovery Rules and Orders.
The practice book prohibits a party from failing to answer interrogatories or from answering them unfairly; in an intentionally false manner; or in a manner calculated to mislead. The practice books also proscribes a party from complying with a discovery order or from failing to testify at a deposition. The facts in this case support a conclusion that the plaintiff's failure to comply with the standard discovery requests and with the court orders was either, at worst an intentional act calculated at misleading the defendant, or at best an unfair attempt to gain the advantage of late disclosures. Notwithstanding, plaintiff's counsel's claims to the contrary, the record indicates that both he and his client knew, at least as of August 30, 1999, that there were medical records for treatment of injuries related to those claimed in this case. But, plaintiff did not amend the discovery compliance. Both plaintiff and plaintiff's counsel also knew of the plaintiff's 1995 stroke and its affect. But, plaintiff did not amend the discovery compliance. Both plaintiff and plaintiff's attorney had within their possession records from which could be generated a list (however incomplete) of treaters and health care providers. But, plaintiff did not amend the discovery compliance. Both the plaintiff and her attorney knew of her history of knee problems. But, plaintiff did not amend the discovery compliance. The plaintiff never provided the defendant with any information to alert it to the fact that there were related injuries until the court began to compel the production of discovery. Had the court not elicited testimony from the plaintiff herself, it is questionable whether the fact that she knew of treatment for related injuries (thus dispelling any claim that she forgot these conditions) and had obtained the treatment records and provided them to her lawyer would have been disclosed to the defendant.
Plaintiff's counsel, in his Objections, ascribes the plaintiff's failure to disclose relevant medical records to a misjudgment. "The plaintiff suggests that she should have been CT Page 4698 more forthcoming and should not have made unilateral decisions as to the relevancy of reports or documents of certain medical providers." Objection dated November 17, 1999. How one can decide that medical records indicating that the plaintiff treated for left knee, hip, low back, neck and left foot are not relevant to the instant matter in which the plaintiff is claiming to have injured her left knee, left hip, left and right low back, neck and left ankle is beyond the comprehension of this court.
The plaintiff was prepared to begin a jury trial on August 30, 1999 without disclosing the full picture of her complicated and extended prior treatment history. The inescapable conclusion is that there was a desire to mislead. This court finds that the failure to provide timely production of discovery information, despite ample opportunity to do so supports a finding that the plaintiff violated § 13-14(a) of the practice book.
B. Appropriate Sanctions
Upon a finding that a party has failed to comply with discovery rules or orders, in contravention of the practice book, the court must then turn to the issue of sanctions. This court next turns to determine the appropriate sanctions for the plaintiff. "Factors to be considered in determining an appropriate sanction are: (1) the cause of the [party's] failure to respond to the posed questions, that is, whether it is due to inability rather than the willfulness, bad faith, or fault of the [party]; (2) the degree of prejudice suffered by the opposing party, which in turn may depend on the importance of the information requested to that party's case; and (3) which of the available sanctions would, under the particular circumstances, be an appropriate response to the disobedient party's conduct." Pavlinko v. Yale-New HavenHospital, 192 Conn. 138, 144 (1984).
This court finds that the plaintiff's failure to comply was wilful and the result of bad faith. The pattern of non-compliance cannot be ignored. The defendant has certainly been prejudiced by the actions of the plaintiff. It is true that there is no jury trial date scheduled. However, the trial of this matter was continued because of the plaintiff's failure to completely and honestly comply with discovery requests. Thus, the plaintiff should not benefit. The delay in trial was due to her acts and omissions. Notwithstanding the absence of a jury trial date, this court concludes that the defendant has been severely prejudiced by the failure of the plaintiff to make full, fair and timely discovery disclosures. CT Page 4699
Of the available sanctions, the most severe, clearly, is the judgment of dismissal. There are rare cases when such a sanction is merited by the evidence. The Connecticut Supreme Court has held that a judgment of dismissal is appropriate "not only to penalize those whose conduct warrants such a sanction but also to deter those who might be tempted to such conduct in the absence of such deterrent. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639 (1976)." Pavlinko v. Yale New HavenHospital, 192 Conn. at 145; Accord Mulrooney v. Wambolt,215 Conn. 211, (1990) ("The sanctions provided in our rules of practice are there for several reasons, including deterrence of those who intentionally flout them.")
The conduct of the plaintiff in this case certainly warrants the most severe sanction. There is benefit to ordering a judgment of dismissal in this case to deter others who might be tempted to follow in the path of the plaintiff. We have rules of discovery for a purpose. That purpose is completely thrawted when a party lies under oath, withholds discoverable information, intentionally misleads his/her opponent and/or fails to disclose relevant and discoverable information in a timely fashion. In this case, not only did the plaintiff violate our rules of discovery, but she violated direct orders of this court. The plaintiff was given many opportunities to comply. Each time, non-compliance was accompanied with excuses. At this point, it is unlikely that the prejudice suffered by the defendant can be overcome. Certainly, in the courts view, to continue to grant the plaintiff further opportunities when she has squandered those previously granted to her, would serve no just purpose. Therefore, this court holds that a judgment of dismissal should enter. Additionally, because the defendant was forced to incur costs to pursue these discovery motion, it is also entitled to reasonable cost, including attorney's fees.
Angela Carol Robinson
Judge