[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF DISMISSAL
The defendant, Sears, Roebuck and Co. has moved the court for a judgment of dismissal against the plaintiff Robert Crivell for "his failure to fully, fairly, truthfully or timely respond" to interrogatories and requests for production in violation of Practice Book Section 13-14.
Having heard oral argument and having considered the applicable practice rules and the respective claims of the parties including their memoranda of law, the court makes the following findings and orders.
On May 15, 1997, the plaintiff, Robert Crivell, filed a complaint against the defendant, Sears, Roebuck Company. The plaintiff alleges that on July 2, 1995, while walking in an aisle located in the defendant's store, he slipped and fell on liquid soap. The plaintiff alleges that the defendant was on notice of the spilled soap prior to his fall, but failed to warn customers or clean up the spill. The plaintiff alleges that he sustained serious injuries of a permanent nature, incurred medical bills and loss of earning capacity. The plaintiff alleges that the defendant's negligence directly and proximately caused the plaintiff's fall and injuries.
On August 23, 2000, pursuant to Practice Book § 13-14, the defendant filed the instant motion [a renewed motion to dismiss,][1] on the grounds that the plaintiff: 1) failed to answer written discovery truthfully, completely, and timely; 2) failed to timely supplement and correct discovery responses; 3) failed to produce medical reports relevant to preexisting medical conditions; and 4) responded falsely to written discovery and to deposition questions. The defendant argues that, as a result of the plaintiff's violations, the defendant has been irreparably prejudiced, and therefore, the court should grant its motion to dismiss, with an award of costs and attorney's fees to the defendant. The defendant also filed memoranda in support of its motion, pursuant to § 11-10.
The plaintiff submitted an objection to the defendant's renewed motion to dismiss, dated September 8, 2000.
Practice Book § 13-14 states: "If any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead, or has failed to CT Page 14805 respond to requests for production . . . or has failed to comply with the [continuing duty to disclose] . . . or has failed otherwise substantially to comply with any other discovery order made pursuant to Sections 13-6 through 13-11, the judicial authority may, on motion, make such order as the ends of justice require . . . [for] entry of a nonsuit or default against the party failing to comply . . . [and] award to the discovering party of the costs of the motion, including a reasonable attorney's fee . . . [and] [i]f the party failing to comply is the plaintiff, the entry of a judgment of dismissal."
The defendant first argues that the plaintiff purposely tried to conceal medical records in an effort to hide his preexisting medical conditions. Specifically, the defendant argues that the plaintiff failed to respond to the defendant's repeated requests for the plaintiff's medical records prior to his 1995 slip and fall. The plaintiff did not authorize a signed release of medical records until October 1998, and even then, the plaintiff only provided a limited release of those records relevant to his slip and fall of July 1995.[2] It was not until February 1999 that the plaintiff gave the defendant an authorization for a full release of the plaintiff's medical records.
In addition, the defendant argues that the plaintiff answered falsely to several interrogatories and deposition questions in an attempt to conceal evidence of his prior injuries. Specifically, in November 1999, when asked during his deposition whether he had any prior back injuries the plaintiff responded in the negative. Thereafter, the defendant discovered through its own investigating that in 1992 the plaintiff had two herniated discs at the same lumbar levels as the injury in this case.
When asked during his 1999 deposition if he ever had any previous falls or other injuries, the plaintiff responded in the negative. Thereafter, the defendant independently discovered that the plaintiff incurred a head injury from a slip and fall in 1989, and a head injury from a car accident in 1994. The defendant noted that the plaintiff only acknowledged the motor vehicle accident when the defendant specifically asked him about it in his 1999 deposition.
With respect to the defendant's interrogatories, submitted in December 1997, the plaintiff identified the following injuries as a result of the incidents alleged in the complaint: "head and back injuries, blurred vision, sharp pain in his head, neck and middle back, numbness in right leg, right ankle, right foot, loss of bladder and bowel control after the fall. Also, continued permanent back pain, permanent pain in the right leg, middle lower back, permanent loss of feeling in right foot." CT Page 14806
The defendant argues that the plaintiff responded falsely to interrogatory number 20 which asked the plaintiff if he had been under a doctor's care in the ten years prior to the complaint for any conditions which were in any way similar or related to the injuries alleged in the complaint, and number 21 which asked if the plaintiff bad been involved in any incident in the ten years prior to the complaint in which he received personal injuries similar or related to those identified in this case. The plaintiff responded "no" to the first question and "not applicable" to the second question, despite the fact that he did have injuries in the ten years previous to the accident, and did in fact seek a doctor's care for injuries similar to the injuries sustained in this case.
Specifically, during his deposition in November of 1999, the plaintiff stated that he had previously injured his right leg, and had gone to a chiropractor for six to seven weeks for treatment of the leg. In addition, however, the defendant later found that the plaintiff had incurred two herniated discs in 1992 and sought treatment from a chiropractor twenty three times,
The plaintiff also incurred head injuries in 1989 and 1994 and sought treatment at Milford Hospital for both of those injuries.
The defendant argues that, although the plaintiff now claims that the right leg injury was in 1992, during the same treatment for the herniated discs, this statement is false because the medical records of 1992 indicate that the plaintiff was suffering symptoms in his left leg, not his right leg. In addition, when asked whether his right leg problem also involved his back, he responded in the negative.
The defendant argues that, as a result of the plaintiff's attempt to conceal evidence of prior injuries and his failure to provide timely and complete discovery, the defendant has been unfairly prejudiced. Specifically, the defendant argues that, in its attempt to obtain the plaintiff's 1990 medical records to inquire whether his doctor treated him for an injury to his right leg, the doctor's office told the defendant that they no longer had any records pertaining to the plaintiff.
The defendant argues that because of the plaintiff's delay, the defendant was kept from getting access to those records before they were destroyed, and that this has irreparably prejudiced the defendant's ability to conduct discovery and defend its case. In addition, in its efforts to obtain the plaintiff's 1992 MRI films, the defendant was told by Bridgeport Radiology that it destroyed the films between October and December 1997. The defendant argues that the films were destroyed months after the defendant first requested them in June 1997. The defendant CT Page 14807 argues that because the films are no longer available, it cannot have experts on either side review them or use them for cross examination against the plaintiff's experts.
In response to the motion, the plaintiff argues that he has complied with all of the defendant's discovery requests, and that he has made a good faith attempt to obtain all medical information, including all prior medical injuries. The plaintiff admits that he only allowed for a limited medical release relevant to the accident of July 2, 1995, but argues that he was not aware that such a limited release may be improper until the defendant advised him otherwise. The plaintiff argues that the limited release was not an attempt to conceal information, and that in February 1999, pursuant to the defendant's legal advice, the plaintiff authorized a full release of his medical records. The plaintiff argues that upon receipt, it immediately forwarded all discovery to the defendant, and that any delay in obtaining medical records after February 1999 cannot be attributed to the plaintiff because he already submitted a medical release to the defendant. The plaintiff argues that the prior delay in discovery was due to the doctor's offices. The plaintiff notes that after February 1999, the defendant also experienced difficulty obtaining records from the doctor's offices and was forced to issue a subpoena for the medical records.
With respect to the plaintiff's answers to the defendant's interrogatories, the plaintiff argues that he honestly did not think that the injuries sustained in the accident were similar or related to previous injuries that he incurred. In addition, the plaintiff argues that he did eventually disclose all information of prior injuries in the November 1999 deposition.
The plaintiff argues that, although the defendant was unable to obtain the 1992 MRI films because they were destroyed, there was no malice or bad faith to keep the defendant from this evidence. The plaintiff argues that he was being treated for cancer and he had honestly forgotten all about the 1992 back injury until reminded by the defendant in the deposition. The plaintiff argues that there is no prejudice to the defendant due to the loss of this film because the 1992 herniation was minor and of no relation to this case, as testified to by Dr. Engle. In addition, the plaintiff argues that the absence of these films would be more harmful to the plaintiff because the defendant could suggest to the trier of fact that a diagnosis was incomplete.
In several instances, the plaintiff gave false statements about his previous injuries, including the egregious denial of having had prior back injuries and medical treatment, when in fact, the plaintiff had two herniated discs in 1992 which he sought treatment for twenty three CT Page 14808 times.
In addition to falsely denying his back injury, the plaintiff failed to provide the defendant with medical records of his prior injuries and kept the defendant from gaining access to such evidence by only authorizing a limited release of his medical records [". . . relevant to a slip andfall incident of July 2, 1995 only!"]. It was not until February 1999 that the plaintiff authorized a full release of his medical records, which was over a year after the defendant first submitted its June 9, 1997 interrogatories, requesting information of his prior injuries.
The plaintiff argues that he did not remember his prior injuries when asked in the deposition and did not disclose the injuries in the interrogatories because he did not think that any of his prior injuries were similar or related to the injuries he alleged in his complaint. These explanations do not justify the plaintiff's noncompliance with the discovery requests.
First, it is highly unlikely that any individual could continue over two years of litigation to forget that he had two herniated discs in 1992, an injury that he sought treatment for from his chiropractor twenty three times. In December 1997, the plaintiff denied having had any previous injuries related to the injuries in his complaint, and in November 1999, the plaintiff denied having had any prior back injuries. In addition, the plaintiff specifically denied having been in any accidents or prior falls, when in fact he had.
Secondly, it is also highly unlikely that the plaintiff honestly determined that his injuries from the accident in this case were not similar or related to injuries he had in the previous ten years. The plaintiff alleged numerous injuries from his 1995 slip and fall, including "head and back injuries, blurred vision, sharp pain in his head, neck and middle back, numbness in right leg . . . continued permanent back pain, permanent pain in right leg, middle lower back . . . ." To argue now that the plaintiff did not think his prior back injury was similar to the back injury he is alleging now is not plausible, especially since the prior injury was at the same lumbar levels as those alleged in this case.
In addition to the back injury, the plaintiff had other prior injuries that were similar or related to the injuries in this case, that he failed to disclose. The plaintiff had prior injuries to his head in a slip and fall incident in 1989 and an automobile accident in 1994, and acknowledged in a deposition in November 1999 that he had injured his right leg previous to the incident in this case. It is not plausible that the plaintiff, nor any party, could logically deny that these prior injuries were similar or related to the injuries alleged in this case. CT Page 14809
"We have rules of discovery for a purpose. That purpose is completely thwarted when a party lies under oath, withholds discoverable information, intentionally misleads his/her opponent and/or fails to disclose relevant and discoverable information in a timely fashion."Asztalos v. Stop Shop Supermarket, Superior Court, judicial district of New Haven at Meriden, Docket No. 263111 (March 14, 2000 (Robinson, J.)) (26 Conn.L.Rptr. 17) (dismissing the plaintiff's suit for failure to disclose prior injuries pursuant to the defendant's discovery request). "Upon finding that a party has failed to comply with discovery rules orders, in contravention of the practice book, the court must then turn to the issue of sanctions." Id. "Careful attention must be paid to the prompt and orderly handling of discovery. Trial courts should not countenance unnecessary delays in discovery and should unhesitatingly impose sanctions proportionate to the circumstances." Osborne v.Osborne, 2 Conn. App. 635, 639, 482 A.2d 77 (1984).
It is the defendant's belief that the court should impose sanctions on the plaintiff because his continual wilful noncompliance with discovery has prejudiced the defendant's case. In imposing sanctions for failure to comply with discovery "[t]he factors to be considered by the court include: (1) whether noncompliance was caused by inability, rather than wilfulness, bad faith or other fault; (2) whether and to what extent noncompliance caused prejudice to the other party, including the importance of the information sought to that party's case; and (3) which sanction would, under the circumstances of the case, be an appropriate judicial response to the noncomplying party's conduct." Biro v. Hill,231 Conn. 462, 464-65, 650 A.2d 541 (1994).
As a result of the plaintiff's noncompliance with the discovery request, certain medical records of the plaintiff's prior injuries were destroyed before the defendant could gain access to them. For instance, the plaintiff did not disclose until February 17, 2000 that a Dr. Cluckey treated the plaintiff for his herniated discs in 1992. When the defendant inquired whether the plaintiff was treated for any other injuries prior to the herniated discs, such as his right leg, the doctor's office informed the defendant that they no longer had any of the plaintiff's medical records. Most importantly, the plaintiff's 1992 MRI films of his herniated discs were destroyed between October and December 1997, months after the defendant made its first discovery request for medical records of prior injuries.
The defendant's inability to use the destroyed medical records and MRI films in its defense has irreparably prejudiced the defendant's case. Even the plaintiff's own medical expert, Dr. Engel, stated that a major factor in determining causation is any prior history of spinal injury. CT Page 14810 Without the 1992 MRI films, the defendant cannot have its own medical expert review the films to determine causation, and cannot cross examine the plaintiff's medical expert on the issue of causation.
The supreme court has held that a judgment of dismissal is appropriate "not only to penalize those whose conduct warrants such a sanction but also to deter those who might be tempted to such conduct in the absence of such deterrent." Pavlinko v. Yale-New Haven Hospital, 192 Conn. 138,145, 470 A.2d 246 (1984). "Of the available sanctions, the most severe, clearly, is the judgment of dismissal." Asztalos v. Stop ShopSupermarket, supra, 26 Conn.L.Rptr. 17.
The court finds that the plaintiff failed to comply with the defendant's discovery requests in a timely and truthful manner in an attempt to conceal the plaintiff's prior injuries, in violation of Practice Book § 13-14, and that this noncompliance irreparably prejudiced the defendant's case.
The court further finds that the plaintiff's noncompliance with the defendant's discovery request and his failure to provide truthful answers to deposition and interrogatory questions was an attempt to mislead or gain unfair advantage over the defendant in this case, in violation of Practice Book § 13-14.
The court further finds that by submitting false answers concerning his previous injuries, and by failing to timely provide the defendant with medical records that were pivotal to the defendant's case, the plaintiff violated Practice Book § 13-14 and irreparably prejudiced the defendant's case.
For the foregoing reasons, the defendant's renewed motion to dismiss this case is granted and it is further ordered that the plaintiff to pay the defendant's counsel the sum of $500.00 as costs of this motion, including reasonable attorney's fees.
By the Court,
Joseph W. Doherty Judge